Michael McGovern, Administrator, etc., Respondent, v. The New York Central and Hudson River Railroad Company, Appellant.

The rule requiring persons before crossing a railroad track to look to see whether trains are approaching is not applied inflexibly in all cases, without regard to age or other circumstances.

In an action to recover damages for the alleged negligent killing of W., plaintiff's intestate, a lad eight years old, it appeared that he was going northerly on the west side of a street, running north and south, in the city of R., on his way to school; said street was crossed by three tracks of defendant's road. The view of the tracks was obstructed so that a person so passing could not see an engine or train approaching from the west, on the south track, until he was within four feet of the track. As W. approached the track a freight train, with an engine at each end, each ringing a bell, was passing west on the middle track. As the rear of the train was crossing the street, W. started to go diagonally across the tracks, in the direction of his school, when he was struck and killed by an engine which was backing down on the south track. Defendant had a flagman at the crossing on the east side of the street. Plaintiff's evidence tended to show that the flagman did not wave his flag or do any other act to warn W. of danger until at the moment of the accident; also that the engine was going at a speed of eight or ten miles an hour. Persons on the engine could not see the track to the east, on account of the coal in the tender. It was shown that a backing engine could not be so easily stopped as one moving forward, and that when so moving an arrangement for discharging sand on the track, in front of the wheels, to check the engine, could not be applied. The crossing was a dangerous one; the street was traversed by many people, and each morning school children were accustomed to pass at this point. Held, that the case was properly submitted to the jury; that it was for them to say whether, under the circumstances, it was prudent to move an engine

backward at such a rate of speed without taking other and additional precautions to protect passengers on the street, and that the jury were justified in finding negligence on the part of the flagman; also that the omission of the boy to look to the west before stepping upon the track was not, under the circumstances, contributory negligence, as matter of law.

In an action brought by a father as administrator, under the statute (chap. 450, Laws of 1847; chap. 256, Laws of 1849), to recover damages for the death of his infant son, where the recovery is for his exclusive benefit, he may proceed for and recover his whole damages, including the loss of services of his son during minority. The recovery will be a bar to another action by the father, as such, assuming that he has a right of action independent of the statute.

(Argued November 22, 1876; decided December 5, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for the alleged negligent killing of William McGovern, plaintiff's intestate. The facts sufficiently appear in the opinion.

*Martin W. Cooke* for the appellant. The motion for a nonsuit should have been granted. (*Culhane* v. *N. Y. C. and H. R. R. R. Co.*, 60 N. Y., 133–137; *Reynolds* v. *N. Y. C. and H. R. R. R. Co.*, 58 id., 248; *Warner* v. *N. Y. C. and H. R. R. R. Co.*, 44 id., 466; 2 Redf. R. Cas., 501; *Burk* v. *Broadway, etc.*, 49 Barb., 529; S. & R. on Neg., § 50 and note; *Wilcox* v. *R., W. and O. R. R. Co.*, 39 N. Y., 358; *Griffin* v. *N. Y. C. and H. R. R. R. Co.*, 40 id., 34.)

*J. H. Martindale* for the respondent. The deceased was not guilty of contributory negligence. (*Reynolds' Case*, 58 N. Y., 252; *O'Mara's Case*, 51 id., 666; *Thurber's Case*, 60 id., 326; *Costello's Case*, 65 Barb., 101.) It was negligence for defendant to run its engine at the rate it was moving. (*Costello's Case*, 65 Barb., 101.)

ANDREWS, J. The defendant, on the trial, contested the right of the plaintiff to recover in both aspects of the case,

on the question of negligence. It was claimed that no neg-
ligence on the part of the defendant had been shown, and
also that there was contributory negligence on the part of the
deceased, or at least that it did not affirmatively appear that
he was free from fault. A motion for a nonsuit was made on
each of these grounds, which was denied. The refusal to non-
suit was proper, unless upon the evidence given it could be
adjudged as matter of law that there was a defect in the plain-
tiff's case, in one or both of the particulars mentioned.

The main facts can be briefly stated. The accident, which
resulted in the death of the plaintiff's intestate, was at the
John street crossing, in the city of Rochester. The railroad
runs east and west, crossing John street at grade by three
tracks. On the south-west corner of John street and the rail-
road there is a house, with a porch extending to within four
feet of the south track, and a person passing along the side-
walk, northerly, on the west side of the street, cannot see an
engine or train approaching from the west until he has
passed this obstruction. The defendant kept a flagman at the
crossing to warn passengers when trains were approaching,
whose usual position was south of the railroad track and on
the east side of John street. The plaintiff's intestate, a
lad eight years of age, left his home, south of the railroad,
on the morning of the accident, to go to his school, north
of the railroad and east of John street, and in company
with other children passed northerly in his usual course,
on the west side of the street, to near the railroad track.
At this time a freight train, with an engine at both ends,
each having a bell which was ringing, moved across John
street, westerly, on the second track of the railroad. At
the same time an engine was backing down from the west
on the south track, also ringing a bell. Just before the
freight train reached the crossing, the flagman, as the evidence
on the part of plaintiff tended to show, stood at the flag-house
without his flag, and being notified that a train was coming
from the east took his flag from where it was hanging, and
unfurled it, and the jury were authorized to find, though the

evidence on this point was conflicting, that he did not wave it or do any other act to warn the children of danger until at the very moment of the accident. When the rear of the freight train was crossing the highway the boy started to cross the track diagonally from the south-west corner of John street, in a snow path leading in the direction of his school, and, as he was passing across the south track, near the center of the highway, the backing engine struck him, and he was thrown down and shoved along the track for a distance of ninety-six feet, when the engine was stopped and the boy was taken up, and soon after died. The rear of the freight train was passing the center of the street as the backing engine reached it. There was much conflict in the evidence as to the speed at which the engine was moving. The engineer and other witnesses for the defendant put it at four or five miles an hour, and witnesses for the plaintiff at eight or ten miles. The persons on the backing engine could not see the track to the east, their view being obstructed by the coal in the tender, and the engineer first knew of the accident by a cry from persons on the track. It was shown that a backing engine could not be so easily stopped as one moving forward, and that an arrangement for discharging sand upon the track in front of the wheels could not be applied to check an engine when moving backwards. The flagman, according to his own testimony, did not discover the backing engine until it was within one hundred and seventy feet or thereabouts of the crossing, although it could have been seen by him for a distance of three hundred feet, and he did not see the deceased go from the sidewalk on to the track.

These facts, we think, raised a question for the jury on the whole case. It was for the jury to say whether, under the circumstances, the defendant exercised due care. The crossing was a dangerous one. It was across a public street in a populous city, traversed by large numbers of people, and each morning children were accustomed to cross the road at this point on their way to school. The view west was partially obstructed by the house and porch on John

street.  The conjunction of circumstances at the time of this accident made it especially important that the company should exercise great care to protect foot passengers from injury. The noise of the advancing freight train was calculated to prevent hearing or distinguishing the noise or the signal from the backing engine.  The credibility of the respective witnesses was for the jury, and if they believed that the engine was backing at the rate of eight or ten miles an hour, it was for them to say whether, under the circumstances, taking into view the nature of the crossing, the fact known to the company that children were accustomed to cross the track at that hour, the fact that the persons on the engine could not see the track behind them, and the greater difficulty in stopping a backing engine, it was prudent to move it at that rate of speed, at least without taking other and additional precautions to secure the safety of persons passing along the street.

In respect to contributory negligence on the part of the boy, it is claimed that the evidence shows that he did not look before stepping upon the track to the west, and that if he had done so he would have seen the engine, and the accident would not have happened.  The rule which requires persons before crossing a railroad track to look to see whether trains are approaching, and that if they omit to do so, and are injured by a collision, which if they had looked would have been avoided, are to be deemed guilty of negligence, is not to be applied inflexibly, and in all cases, without regard to age or other circumstances.  The law is not so unreasonable as to expect or require the same maturity of judgment, or the same degree of care or circumspection in a child of tender years as in an adult.  (*Reynolds' Case*, 58 N. Y., 252.)  The boy was on his way to school, and no negligence can be imputed to the parents in allowing him to go alone (*Drew v. The Sixth Avenue R. R. Co.*, 26 N. Y., 49) as he had done for nine months before the accident.  The circumstances at the time and the appearances, were calculated to confuse and mislead him.  He very naturally may have inferred

that the flagman was flagging the passing train and not the backing engine, and when the first danger was passed, he doubtless proceeded on his way unconscious of any other peril. The learned judge at the trial, in a very careful charge to the jury, submitted to them to determine on this point whether " he did all that could be required of a lad of his years for his own safety," and this, we think, was right, and that he could not have decided the question of negligence as one of law, conceding the fact to be, that the deceased did not look west before stepping on the track.

The other ground of nonsuit, that it was not affirmatively shown that the deceased was free from negligence in view of what has been said, need not be specially considered. The circumstances of the accident and the conduct of the deceased before the injury, were brought to the notice of the jury, and furnished a basis for a finding by the jury upon the question of the absence of negligence on his part.

The court in charging the jury, enumerated and commented upon the circumstances relied upon as showing the defendant's negligence, and said, among other things, that they might consider the fact that the engine was backing instead of going forward. " This," the judge said, " is of importance, in view of two items of testimony tending to show that an engine running in that direction, is less easy of control than one running straight forward," and then referred to the fact, that the persons on the engine could not see the track behind them ; and also, to the circumstance " that the said pipes are so constructed that they will not discharge sand upon the track except when the engine is going forward." At the conclusion of the charge the defendant's counsel stated that he excepted to that part of the charge " by which the jury were permitted to consider the fact that the sand-pipes of the engine were so constructed as to be of no use in stopping a backing engine, as tending to establish negligence," and requested the court to charge, that such construction of the sand-pipes afforded no evidence of such negligence." The judge refused to charge on this

subject otherwise than as he had charged, and the defendant's counsel excepted.

It is obvious that the court did not intend to charge, that it was negligence on the part of the company to use engines in backing without an arrangement for discharging sand back of the wheels. The fact that in backing an engine the sand-boxes could not be used to retard the movement, was allowed to be considered as a circumstance bearing upon the qustion, whether the engine was running at an unsafe rate of speed. The jury could not have been misled and the exception was not well taken.

The defendant's counsel also requested the court to charge, " that if the flagman displayed his flag in due time to have warned the deceased, negligence cannot be imputed to the defendant, because the flagman did not do something more." The court refused to charge on the subject otherwise than as he had already charged.

It is not the duty of a railroad company to place a flagman at street-crossings; but it was said in *Kissenger* v. *New York and Harlem Railroad Company* (56 N. Y., 543), " that if one is employed at a particular crossing his neglect to perform the usual and ordinary functions of the post may be sufficient to charge the company." In this case it was the obvious duty of the flagman to warn the children as well of the backing engine as of the passing train. Indeed it was much more necessary for him to do the former, because the other danger was apparent.

The jury were, we think, authorized to find that he did not wave his flag or do any act indicating that there was danger except from the train, and from this to find a neglect on his part of the ordinary and proper duties of his position.

A question arises as to the rule of damages. The deceased was the son of the plaintiff, who brings this action under the statute, as administrator, to recover the pecuniary injuries to the next of kin, resulting from his death. (Chap. 450, Laws of 1847; chap. 256, Laws of 1849.) The defendant's counsel on the trial asked the court to charge the jury "that inas-

much as the father is entitled to the services of his son until he becomes of age, the earnings which he might have made during his minority are not to be considered." The court refused to charge as requested. Assuming, as seems to have been held in *Ford* v. *Monroe* (20 Wend., 210), that a father can recover damages for the loss of service of his minor son, against a person who negligently caused his death, to be computed and ascertained from the time of his death until the time when the son, if living, would have attained his majority, the question arises whether, in an action brought by the father, as administrator, under the statute, the entire damages may be recovered including the loss of service when as in this case the father elects to proceed for and claim his whole damages in the statutory action, and the recovery is for his exclusive benefit.

We are inclined to the opinion that in such a case damages for the loss of service may be included in the recovery as a part of the pecuniary loss to the next of kin of the deceased, resulting from his death, and that a recovery will bar another action for the same damages by the father as such. The point is certainly not free from difficulty, but this construction of the statute is, we think, permissible, and it is convenient, avoiding as it does the necessity which would otherwise exist of splitting up what is substantially a single claim, and bringing two actions for its recovery. We confine our opinion to the precise case presented, assuming, on the authority of *Ford* v. *Monroe*, that the father has a right of action, independent of the statute, for loss of service.

The judgment should be affirmed, with costs.

All concur, except CHURCH, Ch. J., and EARL, J., not voting; ALLEN, J., taking no part.

Judgment affirmed.