SOLOMON FINKLESTEIN, as Administrator, etc., of ETTA FINKLESTEIN, Deceased, Appellant, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Injury to a child from the negligent backing of an engine over a street crossing — duty of a flagman to warn persons of approaching trains — when the rate at which an engine is running across a street used by many persons is to be considered by the jury — the giving of the statutory signals does not necessarily establish due care.*

The plaintiff's child, a strong intelligent girl about nine years old, while return-ing from an errand on which she had been sent by her mother, was struck and killed at the Chatham street crossing, in the city of Rochester, by one of the defendant's engines. The crossing is in a populous part of the city, the streets running north and south and being crossed at right angles by five of the defendant's tracks. As the child, with two boys, each two or three years older than herself, approached the tracks, going south, a freight train, with a caboose on the rear end, crossed the street on the north track, going west. After the train passed, and before the caboose had passed out of the street, one of the boys started to cross the tracks, and either succeeded in doing so or stepped back (the evidence as to what he did being conflicting); the girl then started to cross the tracks and was struck by an engine and tender, backing to the east, upon the track just south of that upon which the freight train had passed.

The testimony as to whether or not the bell of the engine was rung was in conflict. The crossing was a flag station, and there was a flagman there at the time of the accident who testified that he knew the engine was approach-ing behind the freight train. Other testimony showed that he stood on the street, on the north side of the tracks in sight of the children, with his flag under his arm, and that he gave no warning or signal of danger. It was an hour when numbers of people were accustomed to cross the tracks at that point on going home from their work; ten or eleven persons being at the cross-ing at the time of the accident.

The plaintiff's counsel requested the court to charge that the flagman owed a duty to the child to warn her against going on the crossing, and that if he was negligent in that regard the defendant was chargeable with negligence; that if the flagman was aware of the approach of the backing engine and did not warn the child of its approach, not to go upon the crossing, then he was negli-gent in the discharge of his duty and the defendant was chargeable with that negligence. The court refused so to charge, but instructed the jury that "if the flagman was guilty of any negligence, that may be taken into account as negligence of the defendant, but I do not charge you that he was bound to warn that child against going across there. If he had any reason to believe that she was going to dash across as soon as the locomotive passed, then it

would have been his duty to warn her, but he had no reason to assume that they would rush immediately past as the caboose went by."

The court had before charged that while the street was cut off by the long freight train the flagman could do nothing; that the train itself was a warning, and that his duties were not active while the train was moving.

*Held,* that it was error to refuse to charge, that if the flagman was aware of the approach of the backing engine and gave no warning, he was guilty of negligence which was imputable to the defendant.

The testimony as to the speed of the engine varied from four or six to ten or fifteen miles an hour. The plaintiff put in evidence a penal ordinance of the city of Rochester prohibiting any railroad company from propelling an engine or car in or through said city, at the place of the accident, at a greater rate than eight miles per hour. The plaintiff's counsel requested the court to charge that, whether the engine was going at a speed less than eight miles an hour or not, it was for the jury to say whether the rate of speed was undue or not, under the circumstances of the case.

*Held,* that it was error to refuse to so charge.

The court was requested, but refused to charge, that if the jury found that the bell was rung that would not necessarily establish due care on the part of the defendant, if the jury were of the opinion that the circumstances, at the time and crossing in question, required other and additional precautions to secure the safety of the child and persons at the crossing.

*Held,* that it erred in refusing to so charge.

The judge charged as follows: "It is the duty of every person crossing a railroad track to use their eyes to see the approach of trains; to see the trains that are approaching, and to use their ears also; and it is their duty to look both ways before entering upon a crossing of a railroad, if it can be done; and it is negligence on the part of the person where he can see, and does not try to see, the approaching train; and I charge you that this applies to the deceased."

*Held,* error; that although the rule thus laid down would have been proper in the case of an adult under ordinary circumstances, it was not applicable to a child under nine years of age under the circumstances of this case.

APPEAL from a judgment in favor of the defendant, entered on a verdict rendered at the Monroe Circuit, and from an order denying a motion for a new trial made on a case.

*W. S. Oliver,* for the appellant.

*Edward Harris,* for the respondent.

SMITH, P. J. :

Action to recover damages for the alleged negligent killing of the plaintiff's child by a collision of one of defendant's engines at the Chatham street crossing, in the city of Rochester.

The crossing is in a populous part of the city. The street runs

north and south and the railroad crosses it nearly at right angles, with five tracks. The tracks are numbered one, two, three, four, from the south, and the fifth track on the south is a side track. There is a sidewalk on each side of the street.

The child Etta was nine years old. She lived in her father's family, a little south of the railroad on the east side of the street, and she was familiar with the crossing. She was in good health, strong and intelligent. The accident occurred on the 15th of March, 1881, about six o'clock in the afternoon. Etta had been sent by her mother to carry a plate of fruit to a neighbor on the north side of the track, and was returning with the plate in her hand in company with her brother Harris, and another lad, Highman, each two or three years older than herself. As they approached the tracks a freight train, with a caboose on the rear end, was crossing the street, going west on track No. 4. Harris, the brother of Etta, testified that when the caboose got about half way across the street, Highman crossed the tracks, and then Etta started to cross ; the witness was going to cross, " and then an engine passed out from behind the freight train and went right over Etta." Highman stated the occurrence somewhat differently. He testified that when the freight train passed, Etta was standing between him and her brother ; witness looked east and west and saw nothing coming ; he started first and got two or three feet and saw the engine coming and stopped ; Etta ran by him and was struck by the engine. Harris also testified that the caboose was upon the street when the engine came out from behind it ; that the engine was going pretty fast ; that as they stood there waiting the freight train prevented their seeing to the west ; that as the train passed its wheels made a noise on the tracks ; that he heard no noise or signal from the engine, and he saw nothing of it till it came. The engine was on track No. 3, and was backing to the east. It was forty-six or forty-seven feet long ; its weight was about thirty tons ; it had a tender in front of it as it was running, which was nineteen feet long, and which, as the defendant's engineer in charge of the engine testified, intercepted his view of the track about seventy feet. The engineer also testified, upon the defendant's examination, that from observations made by him he had discovered that from the place on the foot-board of the engine, where the engineer stands,

he could see a boy twelve years old fifty-one feet ahead of the tender — see the rim of his hat that is all. He further testified, on cross-examination, that on the occasion in question, he could not see anything to the north of his engine, because of the passing freight train, and that before he got to Chatham street, he was looking back to St. Joseph street, but that when he came to the west side of the crossing he was looking east. He also testified that there was a sand-box on his engine, intended to be used for checking speed, but it could not be used in backing. The testimony as to the speed of the engine varied from four or six miles to ten or fifteen miles per hour. The Chatham street crossing was a flag station. There was a flagman there at the time, who testified that he knew the engine was approaching behind the freight train. There was testimony tending to show that he stood on the street on the north side of the tracks, in sight of the children, with his flag under his arm, and that he gave no warning or signal of danger. It was an hour when numbers of people were accustomed to cross the tracks at that point in going from their work, and the engineer in charge of the engine knew that fact. Ten or eleven of the witnesses called, besides the children and the flagman, were at the crossing at the time. The employees on the engine testified that the bell was rung, but all the witnesses who were at the crossing, except the flagman, testified that they did not hear it.

The questions of negligence and contributory negligence were submitted to the jury, and they found for the defendant.

The plaintiff's counsel requested the court to charge the jury that the flagman owed a duty to the child to warn her against going on the crossing, and that if he was negligent in that regard, the defendant is chargeable with negligence. The court refused so to charge, but instructed the jury as follows: If the flagman was guilty of any negligence, that may be taken into the account as negligence of the defendant; but I do not charge you that he was bound to warn that child against going across there. If he had any reason to believe that she was going to dash across as soon as the locomotive passed, then it would have been his duty to warn her; but he had no reason to assume that they would rush immediately past as the caboose went by. To the refusal to charge as requested, and to the charge as given, the plaintiff's counsel excepted.

The plaintiff's counsel also asked the court to charge " that if the flagman was aware of the approach of the backing engine and did not warn the child of its approach, not to go upon the crossing, then he was negligent in the discharge of his duty, and the defendant is chargeable with that negligence." The court declined except as charged, and the plaintiff excepted.

Before the requests above stated were made, the court had charged the jury, in substance, that while the street was cut off by the long freight train, the flagman could do nothing; that the train was a warning; that he was there to warn, so far as that train was concerned, persons that would be liable to cross ahead of it, and that his duties were not active while that train was moving.

We are of the opinion that the trial judge erred in refusing to charge that if the flagman was aware of the approach of the backing engine, and gave no warning, he was negligent, and his negligence is imputable to the defendant. It was held in *Kissenger* v. *The New York and Harlem Railroad Company* (56 N. Y., 538) that although it is not negligence for a railroad company to omit to keep a flagman at a crossing, yet if one is employed, his neglect to perform the usual and ordinary functions of the place may be sufficient to charge the company. That if one approaching a crossing where there is a flagman does not hear the bell of an approaching engine, and the flagman neglects to give any warning and an injury happens, solely produced by such neglect, it is sufficient to make the company liable. That rule was affirmed and applied in the case of *McGovern* v. *The New York Central and Hudson River Railroad Company* (67 N. Y., 417). In each of those cases the plaintiff's injury was caused by the sudden approach of a backing engine masked by an intervening train. In the McGovern case the person injured was a boy eight years old, and ANDREWS, J., delivering the opinion of the Court of Appeals, said : " In this case it was the obvious duty of the flagman to warn the children, as well of the backing engine, as of the passing train. Indeed, it was much more necessary for him to do the former, because the other danger was apparent." (P. 423 )

In this view of the case it is not material whether the flagman had reason to suppose that the children intended to cross immediately after the train had passed, or whether he knew of the presence

of the children.   His duty was not specially to the deceased, but to all the persons who were there in his view waiting to cross the tracks; and it was his duty to warn them of the backing engine as soon as he knew of its near approach.

The plaintiff put in evidence a penal ordinance of the city of Rochester, which prohibited any railroad company from propelling an engine or car in or through said city, between North and Brown streets, at a greater speed than eight miles per hour.   The plaintiff's counsel asked the court to charge that whether the engine was going at a speed less than eight miles an hour or not, it was for the jury to say whether the rate of speed was undue or not, under the circumstances.   The request was declined and an exception was taken.   In view of the facts that the street was one largely traveled; that it was at an hour of the day when the street was in use by people going from their work; that there was a freight train just about to uncover the crossing; that the engine was running backwards and the tender cut off the view of the track for a distance of seventy feet in advance, all which facts were known to the persons operating the engine, we think the question was fairly presented whether the rate of speed of the engine was more rapid than was consistent with the exercise of due care, without reference to the ordinance, and that the question should have been submitted to the jury.

The plaintiff's counsel asked the court to charge that if the jury find that the bell was rung, that will not necessarily establish due care on the part of the defendant, if the jury are of the opinion that the circumstances, at the time and crossing in question, required other and additional precautions to secure the safety of the child and persons at the crossing.   The request was declined, and an exception taken.   Under the circumstances already stated, we think the plaintiff was entitled to an instruction in accordance with the request, and its refusal was error.   (*Richardson* v. *The New York Central R. R. Co.*, 45 N. Y., 846; *Eaton* v. *The Erie Ry. Co.*, 51 id., 544; *Weber* v. *The N. Y C. and H. R. R. R. Co.*, 58 id., 451; *Dyer* v. *The Erie Ry. Co.*, 71 id., 228; *Ryan* v. *N. Y. C. and H. R. R. R. Co.*, 37 Hun, 186, per BARKER, J., pp. 188, 189; *Barry* v. *N. Y. C. and H. R. R. R. Co.*, 92 N. Y., 289.)

The judge charged the jury as follows : " It is the duty of every person crossing a railroad track to use their eyes to see the approach

of trains; to see the trains that are approaching, and to use their ears also; and it is their duty to look both ways before entering upon a crossing of a railroad, if it can be done; and it is negligence on the part of the person where he can see and does not try to see the approaching train, and I charge you that this applies to the deceased." This instruction was excepted to. The rule thus laid down would have been proper in the case of an adult, under ordinary circumstances, but is it applicable to a child nine years of age, under the circumstances of this case? In so far as the instruction required the same degree of caution and care from the deceased child as the law requires from an adult under like circumstances, we regard it as erroneous. The degree of care required of an infant of tender years, the omission of which will constitute negligence on his part, is entirely different from that required of an adult. It is to be measured in each case by the maturity and capacity of the individual, the law only requiring that degree of care to be reasonably expected in view thereof. (*Thurber* v. *The Harlem Bridge, M. and F. R. R. Co.*, 60 N. Y., 326, and cases there cited by ALLEN, J., pp. 335, 336; *McGovern* v. *N. Y. C. and H. R. R. R. Co.*, 67 id., 417, 420; *Byrne* v. *N. Y. C. and H. R. R. R. Co.*, 83 id., 620; *Dowling* v. *N. Y. C. and H. R. R. R. Co.*, 90 id., 670; *Barry* v. *N. Y. C. and H. R. R. R. Co.*, 92 id., 289.)

The judgment and order should be reversed and a new trial granted, costs to abide event.

BARKER, HAIGHT and BRADLEY, JJ., concurred.

Order reversed and new trial ordered, with costs to abide event.