It cannot legitimately be inferred from any of this testimony that Mr. Sire consented to these repairs and alterations being made, in such a way as to bind his interest in the property. All that was shown is that he was upon the property, and admired the work. He did know that it was being done under a contract with his lessee. He was not bound to interpose and prevent the plaintiff from carrying out its contract. No active duty of interference rested upon him. The most that can be said is that he remained passive. The active duty of inquiry was upon the contractor (Sprnck v. McRoberts, supra); and under the particular circumstances of this case, and the condition of the proof upon the subject, as the record comes before us, there was not sufficient to justify such an inference of consent as will bind the owner's estate to the lien asserted against it.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

McCARTHY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

RAILROADS—PERSONAL INJURY—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

> Plaintiff, several months over seven years of age, on her way to school, walked westerly on the sidewalk on a street crossed diagonally by defendant's tracks. Reaching a point about 12 feet from the first track, she stopped and waited until the rear end of a freight train had passed going west, and then, looking directly ahead of her, she started on a run until she reached the second track, when she discovered a passenger train coming from the west at from 20 to 25 miles an hour. Instead of retracing her steps, she turned and ran in an easterly direction along the side of the track, when she was almost immediately overtaken and struck by steps projecting from one of the cars. *Held*, it being conceded that she was sui juris, that she was guilty of contributory negligence.
>
> Ward, J., dissenting.

Appeal from trial term, Niagara county.

Action by Agnes McCarthy, an infant, by her guardian ad litem, Frank McCarthy, against the New York Central & Hudson River Railroad Company. Plaintiff was nonsuited, and she appeals. Affirmed.

The plaintiff, who is an infant, brings this action to recover damages for personal injuries which she received by coming into collision with one of the defendant's trains while attempting to cross Ontario street, in the city of Lockport. Ontario street runs east and west, and the defendant's tracks, two in number, cross that highway diagonally. At about half past 8 o'clock on the morning of May 1, 1896, the plaintiff was walking westerly on the sidewalk on Ontario street on her way to school. As she approached the northerly track of the defendant's road, a freight train was passing thereon, and going in a westerly direction. When she reached a point about 12 feet from the track she stopped, waited until the rear end of the freight train had passed over the crossing, and then, looking directly ahead of her, started on a run until she reached the second track, when she discovered a passenger train coming from the west at the rate of from 20 to 25 miles an hour. In her fright, instead of retracing her steps, she turned, and ran in an easterly direction along by the side of the track, when she was almost immediately overtaken by the train, and struck by the steps which projected from one of the cars thereof. The

blow threw her to the ground, and produced serious bodily injuries, from the effects of which she will probably never entirely recover. At the close of the plaintiff's case a nonsuit was directed, and from the judgment entered thereon this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

P. F. King, for appellant.

Charles A. Pooley, for respondent.

ADAMS, J. It is conceded that the train which collided with the plaintiff was running at a rate of speed which was in excess of that permitted by an ordinance of the city of Lockport, and there is also some evidence tending to show that the flagman who was generally stationed at this crossing was not at his post of duty at the time of the accident. There was consequently sufficient evidence of the defendant's negligence to have required the submission of that question to the jury, and so the trial court held; but the nonsuit was granted upon the ground that it affirmatively appeared that the plaintiff's injuries were plainly the result of her own negligence. If it may be assumed, as it was at the trial, that, at the time of the accident, the plaintiff was capable of exercising proper care and judgment for her own protection, it cannot be doubted that the trial court was fully justified in dealing with the question which was presented by the evidence of the plaintiff's witnesses as one of law, and not of fact; for it is seldom that so plain a case of contributory negligence finds its way into court. Indeed, it is established, by the evidence of every witness who saw anything of the accident, that the plaintiff, so far from exercising any care or judgment for her own safety, rushed heedlessly onto the south track, without making the slightest effort to ascertain whether or not a train was approaching, although it is undisputed that the train was then in plain sight, and could easily have been avoided had she looked in the direction from which it was coming.

It is insisted, however, that, in view of the tender years of the plaintiff, the question of her contributory negligence was one of fact, which should have been submitted to the jury; and this contention presents for our consideration a question which is sometimes quite difficult of solution, although, in the present instance, it has been relieved of some of the perplexities which would ordinarily encompass it by the assumption of the trial court, and the apparent acquiescence therein by counsel for both parties. By express provision of the criminal law of this state, infants under the age of 7 years are deemed incapable of committing crimes, and such incapacity presumptively continues until the age of 12 (Pen. Code, §§ 18, 19); but, although it has been recently held that the rule of the criminal law which limits the period of presumptive incapacity might be applied with safety to civil actions (Tucker v. Railroad Co., 124 N. Y. 308–318, 26 N. E. 916), yet the courts have found it impossible to adopt and arbitrarily apply this rule in every instance, for experience has shown that each case is, of necessity, dependent in a very large measure upon its own circumstances. Some children,

for.instance, are endowed by nature with greater capacity than others at the same age for appreciating and guarding against a dangerous situation which may suddenly confront them; while, upon the other hand, the physical or mental condition of one child may have been such as to deprive it of the power to protect itself, in the presence of danger, which another and a younger one would have exercised under the same conditions.

But, although each case may differ from every other in its circumstances, there are nevertheless some principles which are applicable to all, one of which is that the mere fact that a child is of a certain age does not necessarily justify the inference that it is incapable of exercising any degree of care for its own preservation (Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712); and another is that the question of whether or not a child is sui juris is generally, within certain limits, one of fact, and not of law (Stone v. Railroad Co., supra; Penny v. Railway Co., 7 App. Div. 595, 40 N. Y. Supp. 172, affirmed 154 N. Y. 770, 49 N. E. 1101).

It must be conceded, however, that, like almost every other rule, the one last stated is not without its exceptions; and the present case, for reasons which we shall briefly state, seems fairly subject to the exception instead of the rule.

The plaintiff, although but two or three months past seven years of age at the time of receiving her injuries, was apparently a bright, intelligent girl. She lived in the vicinity of the crossing. She was entirely familiar with it, and had been obliged to pass over it, on her way to and from school, at least twice each day for several weeks prior to the accident. She had frequently seen the cars pass over the highway at this point, and had occasionally been obliged to wait until they had passed before she could get across. And it was doubtless this familiarity with her surroundings which bred within her that contempt for danger which is so often exhibited by much older persons, and which, in all probability, was the principal reason which induced her to run upon the track in the heedless and reckless manner described by all of her witnesses. The circumstances just narrated would seem to indicate that the plaintiff was not only competent to take care of herself, but that she was so regarded by her parents; and although, on account of her age, it may be said that she would not be required to exercise the same degree of care which would be exacted of an adult in like circumstances, the defendant still has the right to insist that she be required to exercise, at least, such care as is commensurate with her age and intelligence, and that she should not, by her failure so to do, become the "heedless instrument of her own injury." Hartfield v. Roper, 21 Wend. 615; Weiss v. Railway Co., 33 App. Div. 221, 53 N. Y. Supp. 449.

In our consideration of the case thus far, we have treated it as one in which the presence of contributory negligence was so marked as possibly to have justified the trial court in withholding from the jury the question of the plaintiff's responsibility for her acts, notwithstanding her extreme youth. We do not, however, wish to be understood as determining that question, nor is it necessary that we should; for, as has already been suggested, it appears from the rec-

ord that the case was tried by both counsel and court upon the. assumption that the plaintiff was sui juris.

In disposing of the defendant's motion for the nonsuit, the learned trial justice delivered an exhaustive oral opinion, in which, after reviewing the facts as well as the law of the case, he used this language:

"It is true, and has been well adjudicated, I think, in all cases, where the question has been up, that a child is not bound to exercise the same degree of care, under circumstances where she is surrounded by danger or in peril, that an adult would be, but there is no case where it has been held that a child sui juris is exempt from the exercise of any care."

This language was followed by a declaration that the nonsuit must be granted, to which decision the learned counsel for the plaintiff contented himself with a general exception. It does not appear that any request was made to have the question of the plaintiff's responsibility submitted to the jury, nor that any express exception was taken to the decision of that question by the court. The case consequently falls directly within the principle enunciated in Wendell v. Railroad Co., 91 N. Y. 420, and it is difficult to see how, under the circumstances, any other result could have been reached by the trial court; for, if it be assumed that the plaintiff had sufficient mental and physical capacity to be chargeable with the exercise of some degree of care and responsible for some degree of negligence, it is as certain as anything can be that her unfortunate accident was the result of her own gross carelessness, for which the defendant cannot and ought not to be held liable.

Judgment affirmed, with costs. All concur, except WARD, J., who dissents in an opinion.

WARD, J. (dissenting). This was an action to recover damages for an injury caused to the plaintiff in May, 1896, at the Ontario street crossing, in Lockport, N. Y., by being struck by a passenger train of the defendant. The plaintiff, a child of seven years and three months of age, on the morning of May 1, 1896, was walking on a sidewalk on Ontario street, on her way to school. The defendant's road passes through the city of Lockport, and has two tracks. At the time that the plaintiff attempted to cross the track, the crossing on the east side of the street, the track nearest to her, was occupied by a passing freight train going west. The distance across the tracks, measured along the sidewalk, is 50 feet. A passenger train was passing at the rate of from 15 to 25 miles per hour. An ordinance of the city of Lockport then in force limited the speed of the trains through the city to 8 miles per hour. The plaintiff was sworn as a witness, and said:

"I was hurt once at the railroad there (the crossing). I remember it was a year ago last summer. I was going to school in the morning. I was hurt on Ontario street. I was going to the Sisters' school, down on Ontario street, on the north side of the track. When I got to the track, I saw the freight train. It was half gone by. After it got by I started to go by, and then I started to run, and I was looking down towards the city. Before I started to cross the tracks, I stopped to let the freight train go by. The freight train went up towards Niagara street, out of the city. I last saw the engine way up by Niagara street crossing. When the last car passed, I went across the track. Q. Well, did you go clear across? A. No. Q. Tell us what happened

then.  A. (Witness 'shakes her head.)  I did not see the passenger train.  I did not know that there was any train coming on the other track.  I cannot tell how I got hurt.  I know a passenger train when I see it.  There are windows in a passenger car, and there are no windows in a freight car.  When I went to cross the track I did not get clear across.  I cannot tell what prevented me,—what stopped me from going across.  I cannot tell how I got hurt.  Q. Where were you hurt?  A. Right there (witness indicating her hip).  Q. Any other place?  A. (Witness indicating her left cheek, and under her left eye and head.)  I do not know what hurt me on the hip.  Mrs. Bronson picked me up.  I was down on the ground.  I do not remember where I was.  I had been going to school three months, and had passed over every day before that, and had seen trains go by.  Q. What did you look down the track for before you went across?  You said you looked down the track.  A. I thought, if there were any more cars coming, they would come from that way.  Q. And, after you looked down, did you see any more cars coming?  A. No, sir. Q. Then you went across?  A. Yes, sir.  Q. Did you know there was any passenger car or train coming from the other way?  A. No, sir."

A Mrs. Hannah Bronson, who picked the little girl up, testified:

"I observed this accident.  I saw the child stand waiting for the freight train to pass.  As soon as it had passed she started to run across the tracks. Just about as she got to the second crossing I think she noticed her danger, and she turned to run eastward down the track to get out of her danger, and the passenger train was so near to her that it knocked her over.  When I first saw her, she was standing and waiting for the freight train to pass.  The freight train was quite a long one, if I remember right.  When the rear end passed the crossing, the other end was quite a little distance west between Niagara street and Ontario.  She went on the track.  The freight train passed on.  She was hurrying, and started on a run."

At the close of the plaintiff's evidence, the court held that there was evidence in the case sufficient to go to the jury on the question of the defendant's negligence, and that conclusion is supported by the evidence, but the plaintiff was nonsuited because it appeared to the court that she was guilty of contributory negligence.  The plaintiff's counsel excepted to the ruling, and that brings up the question as to whether there was any question to go to the jury arising from the evidence, and in determining that question we must take the most favorable view for the plaintiff of the evidence.  I have given the extracts from the testimony of two witnesses to show that the little girl was confused, as a child at that age might well be, as to the approaching passenger train, which was coming in from the same direction in which the freight train was going.  She supposed that, if any other train was coming, it would be from the same direction that the freight train had come from.  It did not seem to have occurred to her to look the other way.  There was a clear question in the case as to whether the child was sui juris,—whether she was capable of contributory negligence.  Her attorney had the right to go to the jury upon that question.  When a court assumes to nonsuit a plaintiff, the plaintiff is deprived of a jury trial of the issues that the evidence presents.  The defendant was plainly negligent.  Had the passenger train been going but eight miles an hour, the child would have passed the crossing in safety, and got beyond danger, before the passenger train reached the crossing.  It would have been better had the plaintiff's attorney called the attention of the court specifically to the question as to whether the child was sui juris, and asked to have gone to the jury upon that question; but

that omission did not deprive the plaintiff of the rights which she has from her exceptions to the nonsuit. The question, also, as to whether the parents of the child exercised proper care in permitting her to go to school alone, was in the case. The parents of the child testified in regard to her attending school alone and as to the care they exercised. The trial court treated this child as an adult substantially, and applied the same rule to her, as to contributory negligence, that should govern the case of a person of full understanding. The child did not have the benefit of the question before a jury, as to whether she was sui juris. It is our duty to grant a new trial, that that vital issue to the plaintiff may be determined by a jury.

The judgment should be reversed, and a new trial granted, with costs to abide the event.