believed that the facts within his knowledge were sufficient to authorize the arrest of the plaintiff. In any event, the jury should have been permitted to consider the motives which influenced him. While there was ample evidence tending to show that the defendant was resorting to the criminal law to collect his debt and to establish his malicious purpose, the inferences from the facts proven were peculiarly within the province of the jury, and ought not to have been disposed of as matter of law.

The defendant endeavored to prove what occurred between the magistrate and himself at the time the information was sworn to, and the evidence was excluded. We think this was error. Parr v. Loder, 97 App. Div. 218, 89 N. Y. Supp. 823. In the most favorable light for the defendant, it did not constitute a defense, but was competent on the question of malice.

The judgment and order should be reversed, and a new trial ordered.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event upon questions of law only, the facts having been examined, and no error found therein. All concur, except McLENNAN, P. J., who dissents.

---

SERANO v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.
   Where, in an action for injuries to a girl five years and ten months old, who was struck by a locomotive at a crossing, it did not appear from any of plaintiff's evidence that she looked in the direction from whence the locomotive approached, or that she exercised any care, there should have been a nonsuit.

   [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1029–1036.]

2. DAMAGES—PERSONAL INJURIES—EXCESSIVE DAMAGES.
   Where, in an action for injuries to a five year old child who was struck by a locomotive, it appeared that at the time she was picked up, there was a scratch on her forehead about half an inch long, and some blood in her mouth, and some red marks two or three inches long on her legs, a verdict for $5,000 was excessive.

   [Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 354–357.]

   Spring and Kruse, JJ., dissenting.

Appeal from Trial Term, Oswego County.

Action by Annie Serano, an infant, by Michael Serano, her guardian ad litem, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Reversed, and remanded for new trial.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Thos. Burns, for appellant.
Udelle Bartlett, for respondent.

NASH, J.  The action is brought to recover damages for personal injuries sustained by the plaintiff by reason of having been struck by an engine on the defendant's road where it crosses Willow street, in the city of Oswego, on the 29th day of December, 1902.  The plaintiff was 5 years, 10 months, and 13 days old at the time of the accident, was walking northerly on the easterly walk of Willow street, and as she approached the railroad crossing, over which were two tracks of the defendant, one called the east and the other west bound, a passenger train was passing over the street, going easterly toward the station.  She stopped and waited for the train to pass.  After it got by she started forward, going over the east-bound track, and as she was nearly over the west-bound track a passenger train coming from the station going westerly struck her, and threw her to one side of the track, causing the injuries complained of.  After she was struck she was picked up and carried to her home near by.  There was a scratch on her forehead about half an inch long, with a drop of blood on it, some blood in her mouth, a few drops of which came out on her handkerchief, and some red marks on the calves of her legs, two or three inches long, not so wide as a quarter of an inch.  There is a conflict of evidence as to the speed of the train which struck the plaintiff, and as to whether proper signals were given of its approach toward the Willow street crossing. The accident occurred on the outskirts of the city, two blocks beyond where the city ordinance regulating speed applied, and within a few hundred feet from the Oswego shops, where the train was to make its first regular stop.  The plaintiff's witnesses, 4 in number, put the speed of the train as it approached the Willow street crossing at 15 and 20 or 25 miles an hour.  The defendant's witnesses, 13 in number, put the speed of the train at 6 to 8 miles an hour.  The train was stopped within 130 or 140 feet of the accident.  On the part of the plaintiff, eight witnesses testify that no signal was given as the train approached the Willow street crossing, four of whom say they did not hear any, and the others say that none was given.  On the part of the defendant the engineer testified that the bell rang from the time he left the station until he crossed Willow street; that whistling is not permitted within the city limits, except in case of emergency; that his bell was operated by compressed air, and is started by opening a valve; that the bell was rung from the time the train started until after the accident.  Twelve other witnesses, six of whom were wholly disinterested, testify that the bell was ringing.  Five passengers testified to the continual ringing of the bell from the time the train left the station.  They cannot be mistaken. By far the greater weight of evidence is to the effect that the speed was not excessive, and that the bell was ringing as the train approached the crossing.

But the more serious question is, whether the case establishes freedom from contributory negligence on the part of the plaintiff.  The plaintiff was a bright, healthy child, able, as is claimed on the part of the parents, to take care of herself in going upon the streets.  As stated in the brief of counsel for the respondent, before the accident she had been accustomed to go on errands and to go to school alone, and had crossed the tracks at Willow street many times.  The evidence is that both her

parents had cautioned her to look out for the cars when crossing the railroad. The evidence is conflicting as to where the plaintiff was at the time she was struck. On the part of the defendant it is claimed that the plaintiff was walking on the track easterly of the crossing, with her back toward the train as it approached; on the part of the plaintiff that she was on the easterly side of Willow street, and was walking across the tracks when struck by the train. That question may be regarded settled in favor of the plaintiff by the verdict of the jury, and upon the assumption that the accident occurred at the crossing, all of the evidence as to the care taken by the plaintiff was furnished by the plaintiff's witnesses. Rose Damore and Rose Reitz testify that they were on Babcock street near the Willow street crossing, and saw the plaintiff on the easterly side of Willow street when she stopped to let the east-bound train pass. Rose Damore says:

"When Annie got onto that east-bound track, and within twelve feet of the end of the train that passed in toward the city, I kept an eye on her. She moved right along toward me, and I saw the other train coming from the city on the west-bound track. She walked right along, and walked right in front of the train, and was struck."

Rose Reitz says that when she first saw Annie she was walking on Willow street about 10 feet from the east-bound track. "The train got by, and then she got in the middle of the tracks, between the east-bound and the west-bound tracks, and she looked around. She looked in the direction in which one of the trains had passed. Then she got on the last track—on the west bound—and the train came and struck her. * * * She looked out toward the way the train was coming from, and she was struck right off." Patrick Shea, saloon keeper, who kept saloon on the corner of Willow and Babcock streets, on his direct examination testified:

"I saw Annie Serano that day. I saw her first standing over there at Barnett's, the other side of the tracks, over on the opposite side of the tracks from my saloon. She was standing right the other side of the east-bound track, on the crossing coming across the east side of the street. She was standing on the opposite side of the tracks from me, right on the crosswalk. By the crosswalk I mean the sidewalk of that street that runs across the railroad tracks. There was a train going east, and that train went by, and she went to cross the track, and the west-bound train hit her. The east-bound train passed by about a half a minute before she started to cross the tracks. The rear end of the east-bound train was about 75 feet away from her when she started to cross the track. Before she started to cross the track she looked east. She started on across, and the west-bound train struck her."

On his cross-examination he testified:

"I saw her walk right along from the point where she started from until she was struck. She looked up toward the way the train was coming, and walked right in front of that engine and was struck."

He further says:

"When she was standing there awaiting for the train to go by, she was within six or seven feet of the east-bound track."

The track was 4 feet 8 inches between the rails, and 8 feet between the tracks. It is in evidence that at that point there is an unobstructed view of the track to Tenth street, the next street east of Willow street.

The witnesses testify that the plaintiff looked in the direction from which the train was coming. Whether she saw it or not only she can tell. She was not called as a witness. She was, as the evidence shows, capable of taking care of herself, waited for the east-bound train to pass before attempting to cross. The next day she gave Dr. Eddy a very intelligent account. of the accident and her injury. Dr. Eddy's testimony:

"I know the plaintiff, Annie Serano; she is the child sitting here in court. I first saw her on the 30th of December, 1902, at her residence. That was the next day after this alleged accident. I went to her home at the request of the New York Central. I went there to make an examination of her, to see if she had been injured. Annie Serano, on arriving at the house, admitted me. I rapped and she opened the door. I saw her mother there and other children. I undertook to talk with the mother. She could not speak English; I could get no information from her. I talked with Annie. I asked Annie who was injured in the house, and she said, 'Nobody.' I said, 'There is a report here that some one has been injured.' 'Oh,' she said, 'Yesterday I was walking on the track with a kerosene can, and two trains in passing—I got mixed up, and was struck by one of them.' I asked where she was injured, and she said her right shoulder and leg. I had her show me her shoulder. I found no evidence or marks of injury to the shoulder whatever, but on the calf of her right leg was a small slightly bruised spot, one half inch in circumference. I examined her head. I did not find any injury to it. She did not make any complaint to me of her head being injured, or of any other part of her body than I have stated. I examined her whole body on that occasion. I did not find anything more than I have stated. She did not complain of anything more than I have already stated. I said, 'Has any physician seen you?' and she said there hadn't. I said to her she should not have walked on the track. She said she had been after kerosene to a grocery store. She said that when she was struck she was going west. The best of my memory is that she said she went to Mr. Tobin's after kerosene, and she went, as she expressed it— took the short cut across the track, and got her kerosene, and then went west. She got mixed up, and was struck by the train."

In the absence of the testimony of the plaintiff herself as to whether or not she looked, or what observations she made before going on the track, it cannot be found upon the testimony of the witnesses that she turned her head in an easterly direction or toward the train—that she exercised any care whatever. The law requires some degree of care and prudence, even in a person of the age of the plaintiff, at the time of the accident, in approaching a place of known danger, to authorize a recovery. Wendell v. N. Y. C. & H. R. R. Co., 91 N. Y. 420.

The verdict for the plaintiff on the first trial upon the same evidence as to damages was $600 and upon this $5,000. It is grossly excessive. But I am of the opinion that upon the case made by the plaintiff there should have been a nonsuit upon the ground of contributory negligence, and that the judgment and order should be reversed upon that ground. Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event upon questions of law only; the facts having been examined, and no error found therein. All concur, except SPRING and KRUSE, JJ., who dissent.