[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 158 
On the 29th day of December, 1902, the plaintiff was struck at the Willow street crossing in the city of Oswego by a locomotive attached to a passenger train owned and operated by the defendant. At the time of the accident she was less than six years of age. She brings this action to recover damages for her personal injuries. The fact that an accident occurred is not disputed, but the extent of the plaintiff's injuries and the responsibility of the defendant therefor is denied. The action has been tried twice. On the first trial the plaintiff recovered a verdict. The judgment entered thereon was reversed by the Appellate Division and a new trial ordered, "Upon the ground that the verdict of the jury was against the weight of the evidence," one of the judges concurring in the result, "Only upon the ground that the finding of the jury that the defendant was negligent was against the weight of the evidence." (Serano v. N.Y.C. H.R.R.R. Co., 102 App. Div. 621.) On the second trial the plaintiff again recovered a verdict. On appeal from the judgment entered thereon the Appellate Division, by a divided court, reversed the judgment and ordered a new trial, "Upon questions of law only, the facts having been examined and no error found therein." (114 App. Div. 684.) The effect of such an order was considered by this court in Albring v. N.Y.C. H.R.R.R. Co. (174 N.Y. 179), in which case the court say: "This order * * * means * * * that the Appellate Division reached the conclusion after examining all the evidence that the jury were justified in accepting as true in all instances of conflict in testimony that which was most favorable to the plaintiff, and yet it could not permit the judgment to stand because that most favorable view of the testimony fell short of supporting the judgment."
This court, as said in the case last mentioned, can review *Page 161 
the questions of law that were before the Appellate Division. Our review is confined to such questions. The plaintiff is the child of poor parents, who for three or four years prior to the accident lived a short distance from the crossing where the accident occurred. She was an intelligent child, and had attended school for about one year prior to the accident. She had been accustomed to cross the tracks of the defendant's road without attendants, and to play with other little girls in the locality of the crossing. She had been told by both her father and mother that in crossing the railroad tracks she should be very careful and look up and down the tracks before crossing to see if a train was coming.
It was not negligence as a matter of law for plaintiff's parents to permit her to go into the street. (Huerzeler v.Central C.T.R.R. Co., 139 N.Y. 490.) Her parents seem to have regarded her as possessing sufficient discretion so that she could go to school and upon errands and to play in the streets unattended. She had sufficient mental and physical capacity so that prior to the day in question she had avoided accidents. The plaintiff was not sworn on the trial and the record does not disclose why she was crossing the defendant's tracks at the time when the accident occurred. The mother testified that plaintiff left the house ten or fifteen minutes before the time when she was brought to the house after the accident. At the crossing in question the defendant has east and west-bound tracks. The general direction of the tracks is east and west and Willow street crosses the tracks so as to make the southeasterly angle of the street line with the tracks about fifty-eight degrees. The locomotive that hit the plaintiff was going west on the west-bound, or northerly, track. The tracks east of the crossing curve sharply to the right and there is a bank with fences and buildings adjoining the railroad tracks on the south. The curve of the defendant's road is such that with an otherwise unobstructed view the engineer sitting on the box on the right side of his locomotive cannot see the crossing until within about forty feet of the same, and the fireman sitting on the *Page 162 
box on the left side of the locomotive, which is the inside of the curve, cannot see the crossing until within about one hundred feet of the same. It is not claimed that the whistle of the locomotive was blown until a moment before the accident, when it was blown at the same time that the emergency brakes were applied. The defendant claims that the bell had been ringing automatically since the train left the Oswego station, about one-half mile east of the crossing where the accident occurred. An east-bound train had passed over the southerly track of the defendant's road a moment before the accident. The engineer on the west-bound train testified that the locomotives of the two trains passed about one hundred or two hundred feet east of Willow street, and other witnesses confirm his estimate. The defendant claims that the plaintiff was not at the Willow street crossing, but that she was on the defendant's right of way, walking between the rails on the west-bound track about ten to twenty-five feet east of the crossing, and that the engineer and fireman of the defendant's west-bound train saw the plaintiff on the tracks as stated, facing west, when their locomotive was within twenty or twenty-five feet of the plaintiff, and that the train was then stopped as quickly as possible and that the plaintiff as she was stepping off the track was struck by the locomotive and thrown into Willow street. Two other witnesses for the defendant corroborated the defendant's contention. Five witnesses for the plaintiff testified that the plaintiff was on the easterly sidewalk of Willow street, going towards the crossing, and that when she arrived within a few feet of the east-bound track she stopped and waited for the east-bound train to pass, and when it had passed so that the rear of the train was from twelve to seventy-five feet east of the crossing she proceeded across the tracks. The distance between the east and west-bound tracks is eight feet. One witness for the plaintiff, who saw the accident, testified that the plaintiff walked slowly, and when she came to the middle between the east-bound and west-bound tracks that she looked both ways, and that when she came to the last track she *Page 163 
looked the way from which the train was coming and was then struck. Another witness for the plaintiff, who saw the accident, testified that after the east-bound train had passed about seventy-five feet, the plaintiff looked east and started across the track and was then struck. The defendant's engineer and fireman and eleven other witnesses, all of whom were on the train, with two exceptions, and eight of whom were defendant's employees, testified that the bell on the locomotive was rung. The plaintiff produced five witnesses who were in the vicinity of the crossing, who testified, in substance, that they were in a position where they could hear the bell if rung and that they listened for it, but it was not rung, and that no signal of any kind was given. Other witnesses for the plaintiff testified that they did not hear any signals. Eleven witnesses for the defendant, all but two of whom were upon the train, and a majority of whom were the defendant's employees, testified that the train was running at a speed of from six to eight miles an hour. The plaintiff produced four witnesses, each of whom were in a position where they could observe the train, and one of them testified that the train was running fifteen miles an hour; one that it was running twenty miles an hour, and two that it was running from twenty to twenty-five miles an hour. The train was running up grade, with only twelve or fifteen passengers, and the emergency brakes were fitted to all of the wheels of the train and the train was stopped, as the jury could have found, in about two hundred and twenty feet from where the brakes were first applied. One other fact that the jury could have considered in determining the defendant's negligence and the plaintiff's freedom from contributory negligence, relates to the steam and smoke from the east-bound train that it is claimed concealed the west-bound train. Defendant's engineer testified, in referring to his seeing the plaintiff on track: "I couldn't see her sooner because there was a very sharp curve there. The curve and the approaching train — some steam from the approaching train — but the curve had the most to do hiding my view from her." And he further *Page 164 
testified: "I saw steam from the other engine, the east-bound engine, as I approached the Willow street crossing, and this girl; it settled; it blew across the west-bound tracks; it cleared up as we approached the girl." The baggage man, who, after the danger signal was given, opened the door of his baggage car on the left-hand side and looked towards the locomotive of his train, testified: "Observed nothing on account of the smoke and steam escaping from the train that we met there." A passenger referring to the east-bound train said: "I didn't see the east-bound train because the steam and smoke came in between the trains." And another that "The smoke and steam from that train going down the east-bound interfered with my view ahead prior to my seeing the girl and the curve itself." Of the two witnesses sworn for the defendant who were not on the train, one, who was west of the crossing, testified: "When the east-bound train went by there was smoke and steam from that point," and the other who was on the west side of the crossing testified, referring to the girl and how she was dressed: "I couldn't tell at that time the smoke and steam from the other train was coming down."
All of the questions involved in the trial, including the question as to whether the plaintiff was sui juris or not, and as to the imputed negligence of the plaintiff's parents, were left to the jury in a charge to which, except as hereafter mentioned, there was no exception and in which the court granted all of the numerous requests to charge made by the defendant's counsel. The defendant excepted to a statement by the court that if the jury found that the plaintiff exercised such care as is required of an adult under similar circumstances, that any negligence on the part of the parents was not imputable to the child, and to the charge of the court that if the jury found the speed of the train was from fifteen to twenty-five miles an hour and they also found that to be a dangerous and excessive rate of speed in the locality of this crossing that they might then find the defendant guilty of negligence. *Page 165 
We find no error in the charge of the court. If a child is capable of exercising the care that is required of an ordinarily prudent person of full age, and such child does exercise such care, the suggestion of negligence on the part of the parents imputable to the child is wholly negatived. The imputed negligence of the parents is wholly based upon the inability of the child to exercise the care and prudence of an adult.
In the absence of signals or safeguards by way of gates or flagmen, a speed of from fifteen to twenty-five miles an hour around a very abrupt curve at a much-used crossing in a city is some evidence to submit to a jury on the question of defendant's negligence. (Zwack v. N.Y., L.E. W.R.R. Co., 160 N.Y. 362.)
A child of tender years is not required to exercise the same degree of care and prudence in the presence of danger which is expected and required of an adult under like circumstances, but she is required to exercise such care and prudence as is commensurate with one of her age and intelligence. (Wendell v.N.Y.C. H.R.R.R. Co., 91 N.Y. 420; Zwack v. N.Y., L.E. W.R.R. Co., 160 N.Y. 362; Costello v. Third Ave. R.R. Co.,161 N.Y. 317; Byrne v. N.Y.C. H.R.R.R. Co., 83 N.Y. 620;McGovern v. N.Y.C. H.R.R.R. Co., 67 N.Y. 421; Thurber v.Harlem B., M. F.R.R. Co., 60 N.Y. 326; Barry v. N.Y.C. H.R.R.R. Co., 92 N.Y. 289.)
The opinion of the court in the Appellate Division concedes that the record discloses a conflict of fact upon all the questions involved between the parties except the question as to whether the plaintiff was guilty of contributory negligence. In its opinion, referring to the defendant's negligence, the court say that, "By far the greater weight of evidence is to the effect that the speed was not excessive and that the bell was ringing as the train approached the crossing." And also, referring to the amount of the verdict, the court say, "The verdict for the plaintiff on the first trial upon the same evidence as to damages was $600, and upon this $5,000. It is grossly excessive." *Page 166 
The evidence on the former trial is not before us, but even if it were and we were inclined to agree with the Appellate Division as to the weight of the testimony relating to the defendant's negligence, and as to the amount of the verdict, this court cannot consider the weight of evidence or questions relating to an excessive verdict. (Dimon v. N.Y.C. H.R.R.R. Co.,173 N.Y. 356, 358.)
As we have stated, we can only consider whether the reversal of the judgment entered upon the verdict should be sustained as a matter of law. We cannot agree with the Appellate Division in holding as a matter of law that the plaintiff was guilty of contributory negligence. In view of the plaintiff's age; the peculiar danger arising from the abrupt curve in the defendant's road; the noise and confusion produced by the east-bound train; the extent to which the view to the east was obscured by the train going east; and the smoke and steam therefrom, it made the plaintiff's negligence under all the circumstances and testimony disclosed by the record, a question of fact which was properly submitted to the jury.
The distinction between the facts in this case and those in cases like Weiss v. Metr. Street Ry. Co. (33 App. Div. 221; affd., 165 N.Y. 665); McCarthy v. N.Y.C. H.R.R.R. Co. (37 App. Div. 187); Wendell v. N.Y.C. H.R.R.R. Co. (91 N.Y. 420), is apparent upon their recital.
There was some evidence upon each of the questions at issue which required that all of the issues involved in the action be submitted to the jury for their determination.
We have examined the exceptions to the admission and rejection of evidence and do not find any error in the rulings of the court which justified the reversal by the court below.
The order of the Appellate Division should be reversed and the judgment entered upon the verdict affirmed, with costs in all the courts.
CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT and WILLARD BARTLETT, JJ., concur; GRAY and HISCOCK, JJ., not sitting.
Order reversed, etc. *Page 167