JOHN M. RYAN, an Infant, by FRANCIS RYAN, His Parent, et al., Respondents, *v.* TIMOTHY FAHEY et al., Respondents, and BARBARA L. RYAN, Appellant.

Fourth Department, February 22, 1974.

*Bouck, Holloway & Kiernan* (*Francis J. Holloway* of counsel), for appellant.

*Boyle, Lipski & McLane* (*P. Alex Lipski* of counsel), for Timothy Fahey and another, respondents.

*Richard N. Cosentino* for John M. Ryan and another, respondents.

MOULE, J. The question we are here called upon to decide is whether a *non sui juris* child, injured while at play, can bring a lawsuit against his mother for failing to properly supervise his activities. In so doing, we must determine whether such an action was within the contemplation of the Court of Appeals in *Gelbman* v. *Gelbman* (23 N Y 2d 434) when it abolished the defense of intrafamilial immunity from suit on nonwillful torts. In our view, it was not.

We have before us a situation in which the plaintiff, a three-year-old boy, was playing in the backyard of a neighbor's home when the neighbor's eight-year-old son ran over his hand with a power-driven riding lawn mower. The infant plaintiff's mother and the neighbor were in the neighbor's house at the time and, as a result of the accident, plaintiff, with his father serving as guardian ad litem, commenced an action in negligence against his mother, the neighbor and her son. In the complaint, $500,-000 damages was demanded for the infant and $10,000 in derivative damages was demanded for the father. It was alleged

that the mother's acts of negligence consisted of her failure to properly supervise the infant plaintiff while at play, and that the neighbor's acts consisted of failing to properly supervise and control her son in his operation of the power lawn mower. The neighbor cross-claimed against the mother for an apportionment of damages under *Dole* v. *Dow Chem. Co.* (30 N Y 2d 143) and the mother then moved at Special Term to dismiss her son's and husband's complaint on the ground that it failed to state a cause of action. This appeal results from Special Term's denial of that motion and, thus, opens for scrutiny the whole issue of just how far the law should go in permitting suits by children against their parents.

Until the Court of Appeals' decision in *Gelbman* v. *Gelbman* (*supra*) the law of this State was that a child could not sue his parent in an action based on the parent's negligence, upon the principle broadly known as intrafamilial immunity. This was first applied in *Sorrentino* v. *Sorrentino* (248 N. Y. 626), an automobile accident case in which an infant passenger was injured in a collision caused by his parent's careless driving. Cases in many other jurisdictions followed the same principle; some in suits involving intentional as well as unintentional torts (*Taubert* v. *Taubert*, 103 Minn. 247; *Hewlett* v. *George*, 68 Miss. 703; *Small* v. *Morrison*, 185 N. C. 577; *Matarese* v. *Matarese*, 47 R. I. 131; *McKelvey* v. *McKelvey*, 111 Tenn. 388; *Roller* v. *Roller*, 37 Wash. 242; *Wick* v. *Wick*, 192 Wis. 260). The basic rationale for the rule was that the family should be considered a unique social unit, the rock upon which the entire fabric of society is founded, and that to permit suits between its members would disrupt its unity and harmony (*Badigian* v. *Badigian*, 9 N Y 2d 472).

The rule expressed in *Sorrentino* was twice reaffirmed by the Court of Appeals, each time in cases involving automobile accidents (*Badigian* v. *Badigian, supra*; *Cannon* v. *Cannon*, 287 N. Y. 425). However, a child could always sue his parent for injury to his property (*Lamb* v. *Lamb*, 146 N. Y. 317) and immunity did not protect a parent who engaged in willful misconduct toward his child (*Cannon* v. *Cannon, supra*). Additionally, in some jurisdictions, a child could recover from his parent indirectly for torts committed by the parent in the course of his employment by suing the employer who then sued his parent for indemnification (*Chase* v. *New Haven Waste Material Corp.*, 111 Conn. 377; *Briggs* v. *City of Philadelphia*, 112 Pa. Super. Ct. 50) and, in others, the child could sue his parent directly in such situations (*Dunlap* v. *Dunlap*, 84 N. H. 352;

*Signs* v. *Signs,* 156 Ohio St. 566; *Worrell* v. *Worrell,* 174 Va. 11; *Borst* v. *Borst,* 41 Wn. 2d 642; *Lusk* v. *Lusk,* 113 W. Va. 17). These exceptions to the immunity rule made it difficult to rationalize the validity of its stated purpose and led Judge STANLEY H. FULD, in a lengthy dissent in the *Badigian* case, to conclude that the doctrine in its broadest sense had become so emasculated that it was no longer viable and should be abolished.

In his dissent in *Badigian,* Judge FULD advanced many reasons why the rule should be discarded. One by one he dismissed arguments that it was needed to preserve family harmony, that the law should not invade the family unit, that it was needed to prevent collusion between family members to collect insurance proceeds, or that, in the absence of insurance, it was needed to protect the family from depletion of its assets. In so doing, however, he expressly recognized that while the immunity doctrine could well be abrogated in most situations, it could never entirely be cast aside, and that in certain instances involving duties and responsibilities inherent in, and unique to, the family relationship, it ought to be retained. He stated (pp. 480–481): "The decision to be made herein has little, if anything, to do with a case where the child is injured in the kitchen or in some other room making up the family establishment. There may be injustice, as well as difficulty in applying the standardized duty of the reasonable man in such a situation. * * * In the ordering of the home, the father is still the judge, or, better perhaps, the king, not liable for error while he acts in good faith, without malice or indifference. * * * we should not be deterred in pursuing such a course [abolishing the immunity defense] by a fear that decision in this case will be binding in cases — which may never eventuate — involving household accidents."

It was Judge FULD's dissent in *Badigian* that formed the basis for the court's majority opinion in *Gelbman* v. *Gelbman* (23 N Y 2d 434, *supra*) when seven years later, in still another automobile liability case, it finally laid the immunity doctrine to rest. Significantly, however, the court in *Gelbman* stated: "By abolishing the defense of intrafamily tort immunity for nonwillful torts, we are not creating liability where none previously existed. Rather, we are permitting recovery, previously denied, after the liability has been established." (23 N Y 2d 434, 439.)

This is the language that has caused a great deal of controversy and its meaning really lies at the heart of the case now before us. We believe that the court in using this language

had Judge FULD's dissent in the *Badigian* case in mind and accepted the principle it set forth, and that Judge FULD's concurrence in *Gelbman* indicates that to be so. We do not believe that *Gelbman* holds that within the family relationship the failure of a parent to properly discipline his child, to instruct him as to the pitfalls of the world around him, to provide for his general comfort and well-being, or to diligently supervise his activities so as to protect him from accidental injury should be the basis for an actionable form of misconduct in the State of New York. We know of no Court of Appeals or Appellate Division case, nor any statute, expressly authorizing or allowing a suit by a child against his parent for such failings.

In brief, and with the narrow question presented by the case before us specifically in mind, we hold that negligent supervision is not a tort. It was not a tort prior to the *Gelbman* case and by *Gelbman's* own terms, its holding was not meant to create liability where none previously existed. Cases cited to the contrary (*Kupchinsky* v. *Vacuum Oil Co.*, 263 N. Y. 128; *Serano* v. *New York Cent. and Hudson Riv. R. R. Co.*, 188 N. Y. 156; *Weil* v. *Dry Dock, East Broadway and Battery R. R. Co.*, 119 N. Y. 147; *Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504; *Kunz* v. *City of Troy*, 104 N. Y. 344; *McGarry* v. *Loomis*, 63 N. Y. 104; *Ihl* v. *Forty-Second St. and Grand St. Ferry R. R. Co.*, 47 N. Y. 317; *Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455; *Hartfield* v. *Roper & Newell*, 21 Wend. 615; *Ryczko* v. *Klenotich*, 204 App. Div. 693; *Dehmann* v. *Beck*, 61 App. Div. 505; *Barry* v. *Second-Ave. R. R. Co.*, 16 N. Y. S. 518) are clearly inapposite. All involve the duty owed by a parent to a third party, not to his child, and hold that where a *non sui juris* infant sues the third party for injuries sustained as a result of an accident, contributory negligence on the part of the child's parent in allowing him to be exposed to a given hazard, is imputed to the child and bars his recovery. It is noteworthy that the imputed negligence rule under which these cases were decided was abrogated by statute in 1935 with the enactment of section 73 of the Domestic Relations Law, the forerunner of section 3-111 of the General Obligations Law. None of the cases cited above allows a child to sue his parent directly for negligent supervision. Since *Sorrentino* (248 N. Y. 626, *supra*) was decided in 1928, a suit on this basis could not be enforced because of the doctrine of parental immunity.

We are aware that some nisi prius courts have expressed the view that causes of action based upon negligent supervision can be sustained, but only in cases where the infant plaintiff alleges

the existence of sufficient special circumstances to put the parent on notice of a need for an unusual degree of supervision. (*Miller* v. *Cross,* 75 Misc 2d 940; *Salley* v. *Weiss,* 74 Misc 2d 619; *Kiernan* v. *Jones,* 73 Misc 2d 829; *Hairston* v. *Broadwater,* 73 Misc 2d 523; *Fake* v. *Terminal Harware,* 73 Misc 2d 39; *Collazo* v. *Manhattan & Bronx Surface Tr. Operating Auth.,* 72 Misc 2d 946; *Bilgore* v. *Rennie,* 72 Misc 2d 639; *Marrero* v. *Just Cab Corp.,* 71 Misc 2d 474.) These cases conclude that this added pleading requirement works a comfortable accommodation between society's interest in allowing a parent some leeway in the manner in which he chooses to raise his child and the countervailing interest which the law has in providing a remedy where there is a wrong. The fallacy in the special circumstances test, however, is that it presupposes that negligent supervision in some form, is a tort. Such, however, is clearly not the case, and the effect of their position is to make it one and thereby create liability where none previously existed. That is beyond the scope of the *Gelbman* decision.

We believe that there is a great distinction between a parent's moral obligation in rearing a child and in so doing providing for the child's education, medical and dental welfare and general supervision and care and a legal obligation to do certain things on behalf of the child. To provide a legal remedy for failure to perform what has always been considered a moral obligation and to subject a parent to penalty for almost undefinable and certainly indefinite obligations of a many-faceted nature would result in an unending multiplicity of litigation and pit child against parent and, in many instances, particularly where the child was not living with both parents, parent against parent. We see a definite sharp distinction between the moral and legal obligations.

We think that reliance by the above-cited nisi prius cases on a special circumstances test is erroneous, especially when it is applied to a direct suit by a child against his parent for negligence arising out of the alleged breach of a uniquely familial responsibility.

In all but the *Salley* case (*supra*), where an infant plaintiff ingested leaded paint, the actions involved automobile liability situations. Typically a child was hit by a car, sued the driver, and the driver then sought to obtain a *Dole* contribution from the child's parents based on their failure to properly supervise him. In none of these cases was the third-party claim allowed. Indeed, if any had been, the result would have been a throwback of sorts to the old cases involving imputation of negligence,

and would have gouged a gaping *Dole* loophole in section 3-111 of the General Obligations Law. To allow suit in such cases would not, as a practical matter, benefit the infant. Instead it would result in a boon to insurance companies. A defendant's insurer could successfully shift a large portion of the responsibility to the child's parent and just by threatening to make a *Dole* claim may be able to prevent actions on behalf of injured infants for fear that the burden of paying a large share of the award would fall back on the parent.

We know of only three cases in this State in which opinions have been written, decided since *Gelbman*, where a cause of action for negligent supervision has actually been sustained. One of these, *Sorrentino* v. *United States* (344 F. Supp. 1308), was a Federal court determination which, like many of the others, *supra*, involved a *Dole* claim in an automobile negligence case. In *Sorrentino*, however, the court was quick to point out that its holding was limited to *Dole*-type cases, and was not to imply a sanctioning of direct suit by a child against his parent. In fact, the court in *Sorrentino* specifically found that such actions were not authorized by *Gelbman*. The other two, *Searles* v. *Dardani* (75 Misc 2d 279) and *Holodook* v. *Spencer* (73 Misc 2d 181), shounsidered together, because in the *Searles* case (*sup*urt relied heavily upon the *Holodook* case as authoriver, the *Holodook* decision has since been reversed bird Department (*Holodook* v. *Spencer*, 43 A D 2d 129).

In an opinion by GREENBLOTT, J., in the *Holodook* case (*supra*), the Third Department has now held that a cause of action based upon a parent's negligent supervision of his child will not lie. It further has expressed approval of disallowing all negligence suits by children against their parents in situations where either (1) the alleged negligent act involves an exercise of parental authority over the child or (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services and other care. Such was the rule laid down in the leading case of *Goller* v. *White* (20 Wis. 2d 402) in a jurisdiction which abolished the defense of intra-family immunity in negligence cases long before we did, and we think that it represents the most enlightened viewpoint on the subject. What the *Goller* case does, in perhaps more specific terms, is to place the same limitation on the abrogation of the immunity rule as did Judge FULD in his dissent in *Badigian* v. *Badigian* (9 N Y 2d 472, *supra*). Several other jurisdictions which have abolished immu-

nity rules of their own have followed this course (*Hebel* v. *Hebel*, 435 P. 2d 8 [Alaska]; *Streenz* v. *Streenz*, 106 Ariz. 86; *Rigdon* v. *Rigdon*, 465 S. W. 2d 921 [Kentucky]; *Plumley* v. *Klein*, 388 Mich. 1; *Silesky* v. *Kelman*, 281 Minn. 431; *France* v. *A. P. A. Transport Corp.*, 56 N. J. 500) and at least one jurisdiction has adopted even broader limitations (*Gibson* v. *Gibson*, 3 Cal. 3d 914).

We think that this kind of solution makes the best sense and fits most easily within the Court of Appeals' decision in the *Gelbman* case. It would permit negligence suits by children against their parents in nonparental authority or discretion cases, such as in automobile accidents, or in situations where the breach of duty alleged would be clearly actionable by a third party, unrelated to the parent and, as such, it would permit recovery previously denied to the child because of the immunity rule. This is what *Gelbman* expressly permits. At the same time, the *Goller* solution would disallow suits arising out of the unique relationship between a parent and his child where liability would not exist but for an alleged breach of the parent's responsibilities in child raising. Thus, there would not be a creation of liability where none previously existed, and the *Gelbman* prohibition would be heeded.

Accordingly, the order of Special Term sh⬛ ⬛versed and judgment entered dismissing the complai⬛ ⬛ground that it fails to state a cause of action.

DEL VECCHIO, J. P., MARSH, WITMER and SIMONS, JJ., concur.

Order unanimously reversed without costs, motion granted and complaint dismissed.