FORCE v. STANDARD SILK CO.

(Circuit Court, N. D. New York. April 17, 1908.)

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—CHILDREN.

The question of the contributory negligence of an infant is not to be determined by the same rules as in case of an adult, but his age, as well as his intelligence, experience, and knowledge, is to be considered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 121–127.

Age as affecting contributory negligence, see note to Atchison, T. & S. F. Ry. Co. v. Hardy, 37 C. C. A. 362.]

2. SAME—NEGLIGENCE WITH RESPECT TO CHILDREN.

Children must be expected to act upon childish instincts and impulses, and others who are chargeable with a duty of care and caution towards them must calculate upon this and take precautions accordingly.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 9.]

3. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

When a case involving negligence is removed from a state to a federal court, unless the action is founded on a state statute such question is one of general law on which the courts of the United States will exercise an independent judgment.

[Ed. Note.—Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

4. MASTER AND SERVANT—INJURY TO SERVANT—DUTY OF MASTER TO GIVE INSTRUCTIONS.

Where a master or his superintendent in charge hires servants, and turns them over to a foreman or another employé to be put to work, and he does so without instructions or warning, when instructions or warnings should have been given, the master cannot escape responsibility on the ground that the foreman or other employé was a fellow servant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 418, 419.]

5. SAME—INFANT EMPLOYÉ.

Plaintiff, when 14 years old, went to work in defendant's silk mill, being hired by the superintendent who took him to the reeling room, and turned him over to another employé, by whom he was set to work cleaning bobbins. At noon time, with defendant's knowledge, he usually remained alone in the room, in which there were several reeling machines operated by belts from a shaft. At the noon hour the belts were thrown off from the pulleys, and usually tied in a loop at the bottom and hitched to the machine so they would not drag, the shaft not being stopped. On some occasions plaintiff had been asked by some one to help in throwing off and tying the belts. The machines were such as were calculated to attract a boy of his age, and on two or three occasions he and a boy from another room had amused themselves at noon by putting on the belts. This was dangerous for inexperienced boys of their age, and was known to be so by the superintendent who had seen the other boy doing it in another room and warned him against it, but no warning or caution was given plaintiff. When he had been at work about three months he was caught in a belt while alone one noon time and his arm was torn off. He testified that the belt had become wound around the shafting and the end was striking the ceiling, and that he got a stepladder and was trying to unwind it when his arm was caught. *Held* that, even if so employed, he was not in the performance of any duty; but that under the facts shown the questions whether defendant was negligent in permitting him to remain alone in the room without warning or instructions not to meddle with the machines, and whether plaintiff was guilty of contributory neg-

ligence considering his age and inexperience, were for the jury, and that a finding in his favor on both issues warranted a recovery from defendant. [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1046-1048, 1098-1105.]

At Law. Motion by defendant for a new trial on minutes of the court, on grounds the verdict is contrary to the law and the evidence and unsupported thereby, and on exceptions to the charge and admission and rejection of evidence.

J. J. Bixby and John H. Grant, for plaintiff.
Edward J. Schoeneck and Thomas S. Jones, for defendant.

RAY, District Judge. This action was commenced in the state court and removed to the Circuit Court of the United States, plaintiff being a citizen and resident of the state of New York, and defendant being a foreign corporation, and the amount involved over $2,000. The action was brought to recover damages alleged to have been sustained by reason of the negligence of the defendant.

Walter J. Force, the plaintiff, became 14 years of age October 1, 1906. He lived at Willowvale, about 1½ miles from defendant's silk mill at Washington Mills, Oneida county, N. Y. Soon after he became fourteen and in the fore part of October, 1906, he went to this mill, and saw Mr. Keeley, the superintendent of the mill, and applied to him for work. He was at once employed, told to report the next Monday, which he did. He found Mr. Keeley, the superintendent, who said, "Come down stairs, and I will let another little boy learn you." The superintendent took the plaintiff down to the reeling room and found one Eddie Cassart, who was about 15 years old, and left plaintiff with him. Cassart told plaintiff he should clean bobbins by sandpapering them, which he did. When cleaned they were put in a box which was wheeled by plaintiff to the elevator, taken therein to another room upstairs, and left. Cassart ran the elevator and showed plaintiff how to run it. Cassart showed plaintiff how to put the boxes on and off the elevator. At the end of a week and a half Cassart went upstairs to the spinning room and became a spinner, leaving plaintiff to do the work described. There was no one in that room who gave orders to plaintiff except Bert Ottoway, who came to that room some three weeks after plaintiff commenced work there, and told him what to do, sweep up, run off belts some 8 or 10 times, and tie up a belt, and one John Brown, who told him some things to do before that. One thing he was told to do, on three occasions, was to run off belts. Plaintiff worked in that room from 7 a. m. to 5 p. m. with one hour's nooning. At noon he remained in that room alone and took his dinner there. This was known to defendant's superintendent. In this room were located some 10 or 12 reeling machines, only 6 in commission, run by belts connecting with a long shaft overhead, which was run by a belt connecting with shafting in another room and thence with the engine. During this noon hour the belts to each machine were disconnected from the pulleys, but left hanging on the long overhead shaft; sometimes they dragged on the floor when thus disconnected, but usually were tied in a loop at the lower end and hitched to the

machine so they would not drag. These long shafts overhead in the same room during the noon hour were left revolving at a rapid rate. There was an abundance of evidence that belts thus hanging on a revolving shaft will sometimes "crawl," slowly at first, on the shaft and then wind up, in which event the ends will strike the ceiling very rapidly and make a noise. There was evidence that it was dangerous to take hold of those belts hanging on that revolving shaft as the moment there was friction, or the belts were caught in any way, they were liable to wind up quickly, and if the person having hold of them was caught thereby or entangled in any way he would be carried or hurled rapidly about the shaft. This was not an obvious danger to an inexperienced person, especially a youth. There was an abundance of room for plaintiff to do his work in cleaning bobbins without going close about the belts or machinery. He was in no danger from the belts if he attended strictly to his business of cleaning bobbins. This plaintiff had had no experience with machinery of this or any description; was unacquainted with it, and, as he claimed, had no knowledge, warnings, or instructions as to the dangers of being about or handling these belts or this machinery. He took to the superintendent a paper or papers showing his age, and his youth was obvious. That such machinery is attractive to boys of that age is a matter of common knowledge. It was described, and there was evidence given by the defendant that it did attract the plaintiff and another boy from the floor below on two or three occasions to intermeddle and experiment and play with it during the noon hour.

The claim of the plaintiff is that on the 29th day of January, 1907, he was left alone in this room in the condition described, and was about to eat his dinner when his attention was called to one of these belts at one of the machines not then in commission which he claims had wound up on the shaft, and that the loose end was striking the ceiling and making a loud noise; that he got a step ladder, put it near the flying belt and tried to catch it for the purpose of tying it up in the manner he had been told to do by Ottoway and Smith with hanging belts (not with those wound up or flying in any manner, as nothing of that kind had occurred there), when he was caught, carried about the shaft three or four times and his arm torn from his body near the shoulder joint. There was no eyewitness to this accident, but the theory of the defendant was that the belt did not wind up as described by the plaintiff but that he was intermeddling or playing or experimenting with it, as it says he had done before, and was caught and injured.

The theory upon which the complaint was framed was that, because Ottoway and Brown had told the plaintiff on the occasions mentioned to tie up the belt on its being disconnected from the pulley of the machine to stop work, it became incidentally a part of his duty to do so, and that, being allowed and permitted to be there, he, on seeing this flying belt at the noon hour, had a right to attempt to catch it and tie it up, and that, if he did so, he was acting in the line of his duty, and that being ignorant of the danger, and not having been warned or instructed by defendant or its representatives as to the danger of handling the belt, and not having gained any knowledge on the subject while there, the defendant was negligent, and that its negligence

was the proximate cause of the injury received by plaintiff, and that contributory negligence cannot be imputed to the plaintiff because of his youth, immaturity, inexperience, ignorance, and lack of instruction as to those latent dangers. The complaint was very full in charging negligence and contained the following:

"And this plaintiff was by said defendant, its officers, foremen and agents, carelessly, negligently, and wrongfully left alone, inexperienced child as he was, to work in a room of said factory where dangerous and rapidly moving machinery was in full motion, without the presence of a foreman or of any experienced or older person or of any other person; that on or about the 29th day of January, 1907, while said plaintiff was absolutely alone in a room in said factory, thus carelessly and negligently left by said defendant, its officers, foremen, and agents, where dangerous machinery was in rapid motion, and while he was with due care and caution proceeding about the duties which had been assigned him, he was caught in a belt, which had by the carelessness and negligence of the defendant, been allowed for many days to remain in a dangerous and unsafe condition, without proper guard or safety appliances, by his right arm, and carried many times around a rapidly moving shaft, his right arm torn completely off a few inches from the shoulder and his body hurled many feet to the floor, fracturing three of his ribs and causing great damage to other parts of his body, and plaintiff was caused great pain and suffering; that no one was present to give him assistance or extricate him from the belt, owing to the carelessness and negligence of defendant, and said calamity happened, and the plaintiff's right arm was thus torn off, and his ribs thus fractured, and plaintiff was caused and still experiences great pain and suffering, without any fault or negligence on his part, but solely through the carelessness and negligence of this defendant."

The complaint also charged that the place was dangerous; that plaintiff was inexperienced and ignorant of the danger, and that he was not properly instructed or informed of the dangers; and that his want of knowledge, etc., was known to defendant. At the close of the plaintiff's evidence the court allowed the following amendment so that the allegations should conform to the proofs and cover the real cause of action, viz.:

"The Court: The plaintiff in this case may amend his complaint if he so desires, so as to allege that the defendant neglected and failed to inform and instruct the plaintiff of the danger of the machinery, or of meddling with or having to do with the machinery in the room in which he was put to work and in which the accident occurred, and that such machinery was dangerous if meddled with by an inexperienced person, and that the machinery in motion was of a character if anything did occur or happen, or whether anything particular or peculiar occurred or not, to attract children and boys inexperienced, and to induce and tempt them to meddle with it or to use it, and that defendant knew this fact or facts, and that this plaintiff, in view of the duties that had been required of him and which he had been put to do in connection with it on the occasion in question, believed, or had reason to believe, in view of what had occurred and what had been required, that it was his duty to stop the flopping, flying revolution of the band, and that in so doing and in doing what he believed to be his duty in good faith, and because of the want of instructions, the negligence of the plaintiff in that regard, the failure to give proper warning and instructions, he was attracted to intermeddle with it, and received the injuries complained of."

There was no question but that plaintiff was injured there in that room by being caught in that belt hurled about the shaft and having his arm torn off as described, and that he intermeddled in some way or for some reason therewith, although that question was left to the jury to decide. The court said:

"You are to consider his station in life, his intelligence also. Of course you are to consider and determine how the accident occurred. If it occurred or happened to him in doing something he knew better than to do—something he knew was dangerous—then he cannot recover at all. You cannot, I think, but it is for you to say, doubt that he intermeddled with this belt and machinery either in play or experimenting or from a mistaken sense of duty to his employer if the flapping and flying belt is what attracted his attention and led him to intermeddle, and that he received his injuries in that way. He was not engaged in either event in performing any duty he owed to the defendant. He was not employed to run a machine or care for belts or correct anything out of place or out of order. He was not by any competent authority assigned to any such duty."

The stepladder was on the floor near by, thrown down, the belt was wound up, the loose end whipping the ceiling, and the plaintiff's arm, torn from his body, was on the floor. The contention of the defendant was that the plaintiff intermeddled with the belt for the purpose of putting it on the machine and seeing it run, or in some other way, and that in so doing he was caught by the belt and injured; that the belt was left tied up and looped to the machine when the employés left for dinner. The court expressly charged the jury that the plaintiff could not recover on any theory that the plaintiff was engaged in the performance of any duty he owed the defendant when he received his injury, or that it was a part of his duty to defendant to catch and tie up the flying belt, if it was flying; that whether he intermeddled with the belt under a mistaken sense of duty to his employer or to play or experiment with it or the machinery, he was not engaged in the performance of any duty to the company; that he could not recover on the theory he was put to work at the machine or with dangerous machinery, and not warned of the dangers.

The case was submitted to the jury on the following propositions and questions of fact, all questions of fact being left to the jury, viz.: (1) Was the plaintiff 14 years of age, immature, just out of school, and without previous knowledge of or experience with or about machinery? (2) Was he hired by the defendant's superintendent and put to work at cleaning bobbins in this room in which were this machinery, these machines, belts and revolving shafts, and left there alone during the noon hours? The jury in effect was told that this was his only duty. (3) Was it dangerous to boys of plaintiff's age, experience, and knowledge to intermeddle with or handle these belts, etc., and did defendant know such fact, or in the exercise of due care ought it to have known it? (4) Was the plaintiff given information or warning as to the danger, if any, of intermeddling with such belts or machinery? Was he warned or told to keep away from them; not to intermeddle therewith? (5) Did anything occur while he worked there to give him notice or information of the danger, if any, of playing, experimenting, or intermeddling with these belts? (6) Was it dangerous to such an inexperienced and uninstructed boy to intermeddle or play or experiment with those belts? Was the danger of so doing obvious to plaintiff? Could he only gain such knowledge by actual experience or by proper warnings or instructions? Had he gained such knowledge in any way? (7) Was this machinery and these belts on these revolving shafts of a nature or character calculated to attract

and induce boys and children of immature years, not experienced or informed of the danger of so doing, to intermeddle or play or experiment therewith? (8) If so, was this known to the defendant, to defendant's superintendent and foreman—those in charge—or in the exercise of due care ought they to have known to these facts? (9) Did they know, or, in the exercise of such care, ought they to have known, that this machinery and the belts were calculated to and would be liable to attract the plaintiff and children of his age to intermeddle or play or experiment therewith? (10) If dangerous and calculated to attract boys and children and defendant knew such facts, or ought to have known them, then it was its duty to either properly guard these belts when left hanging on these revolving shafts or the belts and the machinery, one or both, so the boys and children left there alone at noon could not get at them, or to warn or instruct them of the danger of intermeddling therewith, or to tell them to keep away from them. (11) That if these dangers did exist: if the belts were attractive and liable to attract children and boys; if the defendant did know all this, or in the exercise of ordinary care ought to have known it; if it did not warn plaintiff to keep away, or instruct him as to the danger of intermeddling therewith, or take any measures to prevent it; if plaintiff was ignorant of the danger and risk of intermeddling therewith— then defendant was guilty of negligence in not directing the plaintiff to keep away, or in not warning him of or instructing him as to the danger, or in not guarding the belts, etc., so they would not be intermeddled with, that is in some way intimating or indicating they were not to be intermeddled with. (12) That if under such circumstances the plaintiff was attracted to the belts when flying about the shaft and striking the ceiling, either under a mistaken sense of duty to the defendant or through curiosity to play and experiment with it, in ignorance of the danger, and induced to intermeddle with such machinery and belt or belts to play or experiment with them, in ignorance of the danger, and in so doing was injured, as described, then the jury was authorized to find negligence and that the negligence of defendant was the proximate cause of the injury and consequent damages. (13) That if the jury found the facts as above stated then the plaintiff could recover unless the plaintiff assumed the risks, or was guilty of contributory negligence on his part which in some degree contributed to the accident and injury. (14) That if he was guilty of such negligence he could not recover. (15) That in determining whether or not the plaintiff was guilty of contributory negligence the jury was to consider his youth, immaturity, inexperience, want of familiarity with such belts and machinery, want of knowledge of the dangers of going about them or handling them, and lack of instructions as to the dangers and to keep away from them; and that the same degree of care and caution is not expected or demanded of an immature and inexperienced and uninstructed youth as of an adult, etc.

There was evidence to sustain each and every proposition above stated (I am not referring to the complaint), and the questions of fact, so far as disputed, were left to the jury.

The jury was also charged, among other things:

"The plaintiff says that these belts and moving, revolving, overhead shaftings were attractive things and liable to attract young boys and children, especially to attract and lead or induce them to play or meddle with them—experiment with them—and they say that this fact is demonstrated by the evidence of the defendant itself, by one of its witnesses, who says that on more than one occasion he was in there and saw the defendant do that, putting on and off belts from one of these machines; that he himself, on one occasion, took a hand in doing it; and the plaintiff says that common knowledge and experience and the common sense of the owners and managers of the mill would teach any one of experience and maturity that those machines would attract boys—lead them to go and look at them. And the plaintiff says that the defendant's superintendent, foreman and managers in that mill had reason or cause to know this fact, and did know it, or in the exercise of due care they ought to have known it, and that you should find that that fact existed; that they knew children had those impulses; that they knew childish impulses and proclivities to play with, or experiment, or meddle with such things, especially when not acquainted with their real nature, and not accustomed to them. Plaintiff also says that it was a dangerous thing for young boys and children to meddle with those belts—those machines—running on this shaft, and that the defendant's managers knew this, or in the exercise of due care ought to have known it, in the exercise of good judgment and thought. * * * The plaintiff says that after that, on more than one occasion, he was told to tie up and did tie up some of these hanging belts, or was told to assist in it; that he was led to believe it was part of his duty to see they were properly tied up and in position; that he was never informed to the contrary, or fully and adequately informed or warned of the danger of handling them or of intermeddling with them in any way, and he says that he didn't know any such danger or appreciate it on account of his youth, his immaturity, his want of experience, and his want of information—want of instruction. He says the danger was not patent or obvious, at least not patent or obvious to him, to a child or boy of his years, however it might have been to a full grown, experienced man. The plaintiff was the only one who remained in that room during the noon hour, and of his remaining and being there, the man who had charge of that room and who hired this boy had knowledge. That man says that he saw the boy there about to eat his dinner. I think he said he never saw him actually eat, but saw him there with his box, and saw him on more than one occasion take his seat in the window or sill; just the place, I am not able to say. Other boys and girls did substantially the same thing on the floor above. * * * The plaintiff claims here, under the evidence—although the boy don't exactly say that—but the claim is, that you should find that he was led and impelled to do that by a sense or idea that it was his duty so to do in serving his employer; that because he had not been warned, or properly instructed, he didn't know it was dangerous, and didn't know or appreciate the danger of so doing; that it was negligence, the plaintiff says, not to inform and instruct him in that business and as to those dangers; and that therefore the defendant is liable in damages for the injuries which the boy then and there received. The plaintiff also says that even if you do find that he was playing or amusing himself, or experimenting with this belt for his own amusement, that he was attracted to it for the reason stated, was led to do so by reason of his inexperience, his youth, and want of instruction from the defendant when he was put to work there in that room, as to the dangers, and that even if he went there for that purpose, to play or experiment with it, that the defendant is liable because it was negligent in not informing him of the danger of so doing, negligent in not informing him of the latent hidden danger, the danger of trying to catch hold of and handle such a belt in such a shape, or in any shape, setting it in motion, not telling him to keep away, and that such negligence was the proximate cause of the injury. The plaintiff says that whether he meddled with the belt the one way or the other is immaterial, so long as he didn't know or appreciate the danger, and the defendant was negligent in not warning and instructing him; that in either case the proximate

cause of the injury was the negligence of the defendant, its negligence in allowing him to be there in that room at the noon hour without attention, with this attractive machinery in motion, and uninformed and uninstructed as to the dangerous character, or the danger of handling or interfering or meddling with these belts or machinery.

"Now, when I say the plaintiff claims this, the plaintiff is a minor, he is a boy, he is represented by his guardian who cares for his interests, and by his counsel, and in stating the claims of the plaintiff I am not stating what the boy states or claims, but what his guardian says; his guardian represents him legally and speaks for him, and it is his claim. * * * Now then, gentlemen, if this machinery—this revolving shaft and other machinery, with these hanging or depending belts—was dangerous to children, or boys of immature age, who should use, or attempt to use, or intermeddle with it, and who didn't know its dangerous character, and appreciate the danger of intermeddling with it, and it was liable and calculated to attract such children, and the defendant's superintendent, officers, and managers knew it, or had reason to believe, under the circumstances and conditions existing there, that the boys and young employés about there, and this plaintiff, would resort to it, or intermeddle with it, or might and probably would do so, and that if they did, they would or might be injured by it, then, if the defendant took no means or measures to keep children, or such boys of immature years or understanding, in its employ, away, and to keep the plaintiff away, and took no means or measures to prevent accidents and gave no instructions as to its dangerous nature and character, and no orders to them, or to the plaintiff to keep away, when in the exercise of due care it ought to have done so, then the defendant was guilty of negligence as a matter of law, if you find the facts so to be, and would be guilty of negligence. And if this plaintiff was induced and enticed by such machinery and its conditions to meddle with it, and was ignorant of its dangerous character, or having been caused to tie up the belt, if that was so, was led to think it was his duty to care for them, and undertook to do so, and was ignorant of the dangers through the fault of the defendant in not warning him and instructing him, and was injured in so doing, then the defendant would be liable for the damage caused by such injury, if such negligence was the proximate cause of the injury. This would be so even if it was not his duty, on seeing this belt in the condition he claims it was, flying about the shaft and striking the ceiling, if it was in such condition, to care for it and tie it up, in either event if those facts that I have recited existed, and you find them so to be, if you find that he was not warned, and not instructed as to the danger, and you find that such danger did exist, and that plaintiff did not know the danger, then the defendant would be liable in either event. * * * It was the duty of the defendant company to furnish this boy a safe place in which to work, and this includes not only the spot and space in which he did work, but the immediate surroundings in that room with which he was liable to come in contact, if the circumstances were such, and the surroundings were such, to the knowledge of this defendant company or its manager, that the plaintiff was liable to be, or would be, naturally enticed, induced, or attracted to them, and to intermeddle with them, and to intermeddle with them was known to the defendant company to be dangerous to an inexperienced and uninformed boy of plaintiff's age, or the defendant or its managers there, in the exercise of due care, ought to have known such facts. Did the defendant company or its managers—those in charge—have reasonable cause to apprehend such an accident, or such intermeddling from such a boy, if it did, and it was dangerous so to do, and defendant knew it, or ought to have known it in the exercise of due care, then it was its duty to provide against it by guards, by stopping the shafting, or by proper instructions and proper warnings, full and adequate, of the dangers."

And on the question of contributory negligence the court charged:

"If you find that the defendant was negligent and that its negligence was the proximate cause of the injury, then you will come to another question, was this plaintiff himself—this boy—guilty of any negligence which contribut-

ed to, or aided to produce, the injury? If so, he cannot recover. But in determining this question of contributory negligence, you are not controlled by the same rules you would be in the case of an adult who understands and appreciates the dangers of the situation, or the dangers of doing what he does do. This plaintiff was an infant—not of mature years—not experienced with such machinery, the evidence tends to show, and, he says, not informed of the dangerous character of this machinery, and he claims the dangers of intermeddling with it were not obvious to him even if they were to an experienced man for the reason stated, and that he didn't appreciate them. An infant, in order to avoid the implication of negligence, is bound to exercise only that degree of care which can reasonably be expected from one of his years; one of his years, in the first instance, and then comes in experience and knowledge gained in the work; hence you, gentlemen of the jury, must consider his age, his capacity, his intelligence, his experience, if any, in the business in which he was engaged; also what information he had received and gained, and what instructions he had received on the subject, if any.

"Now, gentlemen, in this court, the burden of making out the negligence of this defendant in the first instance is on the plaintiff—on this guardian of this boy—and he must have satisfied you by a fair preponderance of evidence, not beyond a reasonable doubt, as in a criminal case, but he must have satisfied you by a fair preponderance of evidence that the defendant was guilty of negligence, and in one of the respects or ways to which I have called your attention. If he has failed in doing that, then he has failed to make a case, and your verdict should be for the defendant. If, however, you find that the defendant was guilty of negligence in either of the respects or ways named, and that that negligence was the proximate cause of this injury, then you come to the question of contributory negligence, and here the burden of proof in this court shifts right around. In order to make out contributory negligence, the burden is on the defendant; it is an affirmative defense and it must be established, in case you find negligence on the part of the defendant in the first instance, and you come to the question of contributory negligence, then the burden is on the defendant of establishing, by a fair preponderance of evidence that this boy was guilty of negligence which contributed to his injury; and, as (I have stated, negligence cannot be imputed to a boy of this age, necessarily, as to an adult, but it depends upon his age, his knowledge and experience.) A boy twelve years of age or over is assumed to be sui juris in the first instance, so there must be evidence tending to show that he was not qualified to understand the danger and appreciate the necessity of observing the same caution required of an adult. Some evidence on that subject has been given. You have seen him here, you have heard his answers to the questions, and you have heard as to his schooling and his experience, and what instructions, if any, he received there, what knowledge he had gained there. But when such evidence is given, then, in getting at the responsibility of an infant, of a boy of this age, or of any age, and determining whether or not he was guilty of contributory negligence, his age, his capacity, his intelligence, his experience, and the information he had, general information on the subject, are all to be considered by the jury. And if there were hidden, concealed or latent dangers in the business, or in the room, and he was liable to be attracted to them, then the question whether he was properly and fully cautioned and instructed as to such dangers, his ability to appreciate by reason of his youth, his apparent capacity, and his intelligence, and all of that is to be considered on the question whether he was guilty of contributory negligence. Of course, if he had been previously instructed as to such dangers before he went there, or he knew them from experience, then no instructions there were necessary. If he had not, and there were such dangers, it was the duty of the defendant, as I have said before, to fully instruct him, and it was negligent not so to do. If he knew the dangers from experience then instructions would not be necessary and a finding of negligence cannot be predicated or based on a failure to give them."

The court also charged:

"Now, gentlemen, as matter of law, children, wherever they are, or wherever they go, must be expected to act upon childish impulses incident to their

years and understanding, and their employers are chargeable with a duty of care and caution towards them such as their years, want of knowledge, and understanding demand, such as their want of information, when it is the duty of the defendant to give that information, would imply or demand, and must calculate upon those, and take precautions accordingly."

This, excepted to by the defendant, was followed by this:

"When this boy went there to work in this room with those surroundings, if there were any latent dangers there, which is for you to say after hearing all this evidence and this description, it was incumbent upon the defendant to give proper instructions, suitable to the years of this boy, his previous experience, and suitable to the conditions and surroundings under which he was put to work. Now, gentlemen, this is the law where there are latent dangers and hazards, incident to the occupation, of which the master knows or ought to know; it is his duty to warn the servant of them fully, and, failing to do so, he is liable to him for any injury that he may sustain in consequence of such neglect; that is, in the absence of contributory negligence. And this rule applies even when the danger or hazard is patent, if, through youth, inexperience, or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard. That is, if it is perfectly patent to the ordinary observer, the danger is, still, if through youth, inexperience, or other cause, a servant is incompetent to fully understand and appreciate the danger and extent of the hazard and the defendant—that is, the employer—had reason to know that, or it ought to know it in the exercise of due care, why, then, of course, it is his duty to give full instruction. If, however, the danger is obvious, and the servant (employé) is of sufficient discretion to see and avoid it, the master cannot be held responsible—the master would be the defendant here—for the injury resulting to the servant, although he did not warn him of the danger."

Among the requests to charge was one that the defendant was not responsible for the negligence of the foreman or assistant foreman, etc. The court was at the moment under the impression that it was the foreman who hired plaintiff and put him to work, but when the attention of the court was directed to the error it immediately corrected the statement, and said to the jury:

"Well, the superintendent, then. Then it was his duty, and if he turned him over [referring to the plaintiff] without instructions to the foreman of this room—I guess that is right—if he turned him over to the foreman without instructions when instructions were necessary, why, then, that would be negligence, then it would be the duty of those people, because the evidence is that he put him in charge of somebody, and told him that that person, in substance—I cannot repeat the words—but told him in substance that that person would give him instructions, and so left it with him. Then if he did not get instructions when it was the duty of defendant to give him such, then you are at liberty to find that there was negligence on the part of the defendant in that respect."

The court was also asked by defendant to charge and did charge that there was no evidence that Ottoway and Van Allen were other than fellow servants of plaintiff's. The evidence showed, and the court told, the jury that defendant had a superintendent and a foreman in the mill who were above the boy, managers of the mill, and that if they knew of the dangers this would be knowledge of the defendant corporation, and it would be their duty to inform the plaintiff of such dangers. The court also charged that Ottoway was not the alter ego of the defendant.

The court also charged the jury:

"Plaintiff assumed all the risks of his employment or those incident thereto, or which he knew or ought to have known, or which were obvious con-

sidering his years and understanding, but he did not assume the risks of the negligence of defendant."

Keeley, defendant's superintendent, who hired plaintiff and put him to work, and who was sworn as a witness, made no claim that he gave plaintiff any instructions or warnings when he hired him and turned him over to Cassart or Kasson. He says he took the plaintiff to the reeling room "and I approached a boy named Eddie Kasson and told him to show the Force boy how to clean the bobbins. Q. What machines were Walter [the plaintiff] working at? A. The reeling. Q. That is, he was taking the bobbins from the reel? A. Yes, sir." He also says that at noon the belts were thrown off by Ottoway assisted sometimes by Van Allen; that the speed of this overhead shaft left running on the day of the accident was 275 revolutions per minute. This superintendent also states that the hanging belts would wind about the shaft "when there was something interfered with the belt." Also, that right after the accident he went into the reeling room, and found the stepladder on the floor and plaintiff's arm also; "Q. That is, that part of the arm which had been severed by the accident? A. Yes, sir." Also that the belt was wound about the shaft "in a tangle." Also that he occasionally saw the plaintiff in that reeling room at noon and eating, the shafts running. Also that he had seen belts travel and crawl on a revolving shaft. Also that after the accident and the same day he saw blood on the floor and on the ceiling of the room.

Ottoway had various duties in the reeling room, and among others the putting on and off of belts, tying them, etc. He says, in substance, that this belt in question was in a different position, the day of the accident, after plaintiff was injured than it was before. Ottoway says he had charge of this reeling room under the superintendent; that it was not locked at noon; that plaintiff brought his dinners, and he saw him many times at noon take his seat in a window in the reeling room, and that he went away and left him there alone, and with four of the shafts in that room running; that when he got back soon after the accident this belt was wound up. Neither the superintendent nor Ottoway claimed they gave the plaintiff any instructions as to the danger of intermeddling with the belts or machinery.

As stated, the evidence was abundant to sustain a finding by the jury that the plaintiff was injured—lost his arm—by intermeddling with the belts while alone in the room at the noon hour where he was allowed to be and remain by the superintendent; that there was danger in so intermeddling therewith; and that he was uninstructed as to the danger of such intermeddling therewith, and ignorant of the danger of so doing. Also, that the defendant, its superintendent and foreman, above plaintiff, knew of this danger. The mere fact that he was injured was evidence on that subject. Railroad Company v. Stout, 17 Wall. (U. S.) 657, 661, 21 L. Ed. 745, approved and followed Union Pacific R. Co. v. McDonald, 152 U. S. 272–275, 14 Sup. Ct. 619, 38 L. Ed. 434. In Railroad Co. v. Stout, at page 661, 662, 17 Wall. (21 L. Ed. 745), the court said:

"That the turntable was a dangerous machine, which would be likely to cause injury to children who resorted to it, might fairly be inferred from the

injury which actually occurred to the plaintiff. There was the same liability to injury to him, and no greater, that existed with reference to all children. When the jury learned from the evidence that he had suffered a serious injury, by his foot being caught between the fixed rail of the roadbed and the turning rail of the table they were justified in believing that there was a probability of the occurrence of such accidents. So, in looking at the remoteness of the machine from inhabited dwellings, when it was proved to the jury that several boys from the hamlet were at play there on this occasion, and that they had been at play upon the turntable on other occasions, and within the observation and to the knowledge of the employés of the defendant, the jury were justified in believing that children would probably resort to it, and that the defendant should have anticipated that such would be the case. As it was in fact, on this occasion, so it was to be expected that the amusement of the boys would have been found in turning this table while they were on it or about it."

There was also abundant evidence that this machinery and these revolving shafts in that room with the hanging belts were attractive to boys of his age and experience and knowledge, and liable to attract them to intermeddle therewith, and that defendant knew this, or in the exercise of due care ought to have known it.

Photographs of the machinery and hanging belts were put in evidence by the defendant. They were described by witnesses; also the mode and manner of putting the belts on and off. The witness for defendant, John Johnson, testified that he worked in the spinning room immediately above the reeling room, and that a few days before the accident he came down into this reeling room at the noon hour and found the plaintiff there. "Q. Now state what was done by Walter Force (the plaintiff) in your presence, and what was said by you and he at that time, if anything? * * * A. He had one of the belts off and was throwing it on." That it was a belt used in connection with a reeling machine. "Q. Just where did he have that belt when you first saw him at that time? A. He had it up, half way up over the top pulley. Q. On the overhead pulley? A. Yes, sir. Q. How did he get it up to that point? A. Stepladder. Q. He was standing upon a stepladder? A. Yes, sir." Also, that plaintiff threw the belt on the driving shaft overhead; that witness said "he better leave it alone or he would get hurt," and plaintiff said "never mind he knew what he was doing." Johnson testified that he himself stood on the ladder and threw the belt on the pulley. This witness also said that once in a while he went down to the reeling room at the noon hour to see the plaintiff; and "once in a while he was throwing on a belt"; that he saw him fooling with the belts on three or four occasions, and once before had helped him do it. "Q. What did you put the belt on for? A. Show him I could do it; he put the belt on, and then I did. Q. Did you go up on the stepladder? A. Yes, I did. Q. Anybody ever tell you not to do it? A. Yes, sir. Q. They have told you? A. Yes, sir. Q. Who told you? A. Mr. Keeley. Q. He told you not to do it? A. Yes, sir. Q. And that was up in the spinning room? A. Yes, sir. Q. Did you have shafts up there? A. Yes, sir. Q. And belts up there? A. Yes, sir. Q. How came he to tell you not to do it up there? A. He told me when I first went in there not to do it." This Johnson boy, now 17 years old, had been there some three years. So we have direct evidence that Keeley, the superintendent, had knowl-

edge that boys should not intermeddle with the belts; that they were liable to intermeddle with them, and that before the accident he had instructed one boy at least not to do it. But it was a fair question for the jury, in view of the novelty, etc., of this running machinery, these depending belts, the curiosity and inclinations and proclivities of boys of that age, etc., whether this machinery, etc., was calculated to attract children of plaintiff's age to play or intermeddle or experiment with it, and whether defendant's managers then knew the fact.

The case as finally presented and tried and submitted to the jury was squarely within the following cases decided by the Supreme Court of the United States, the Circuit Court of Appeals in this the Second Circuit, the Supreme Court of the states of Michigan and Minnesota, etc., viz., Railroad Company v. Stout, 17 Wall. (U. S.) 657, 661, 662, 21 L. Ed. 745; Union Pacific R. Co. v. McDonald, 152 U. S. 262, 273, 275, 14 Sup. Ct. 619, 38 L. Ed. 434; Peirce v. Lyden (C. C. A., Second Circuit) 157 Fed. 552 (decided November 7, 1907); Keffe v. Milwaukee & St. Paul R. R. Co., 21 Minn. 207, 211, 18 Am. Rep. 393; Powers v. Harlow, 53 Mich. 507, 515, 19 N. W. 257, 51 Am. Rep. 154; Iamurri v. Saginaw City Gas Co., 148 Mich. 27, 111 N. W. 884.

In Railroad Co. v. Stout, supra, children had played on a turntable on defendant's land which was not guarded or fastened, and which easily turned. The plaintiff, an infant, who had never been there before, went with two other boys, one of whom had been to the turntable to play before, to this turntable to play on it and while so doing was injured. They were not invited there or even knowingly permitted to be there. The case states, page 658 of 17 Wall. (21 L. Ed. 745):

"One witness, then a servant of the company, testified that he had previously seen boys playing at the turntable, and had forbidden them from playing there. But the witness had no charge of the table, and did not communicate the fact of having seen boys playing there to any of the officers or servants of the company having the table in charge."

The court (see page 659) submitted the question whether the turntable was dangerous and would be liable to cause injury to children who should resort to it; whether defendant was negligent in not anticipating that children would be liable to resort to it and be injured if they did. If not, then there was no negligence. There was no direct evidence that the turntable was dangerous to children who should resort to it, or that defendant's officers or managers knew they did resort to it, but the court held that from the very nature of it, and the fact that injury did occur, the jury was justified in finding those facts in language already quoted. This case has been criticised, and in some states—New York, New Jersey, and Massachusetts—the courts have refused to follow it (see Turess v. Railroad Co., 61 N. J. Law, 314, 40 Atl. 614; McAlpin v. Powell, 70 N. Y. 126, 26 Am. Rep. 555; Daniels v. N. Y. & N. E. R. Co., 154 Mass. 349, 28 N. E. 283, 13 L. R. A. 248, 26 Am. St. Rep. 253), but the Supreme Court of the United States, which governs this court and all negligence cases tried therein not founded on and governed by some statute of the particular state, and which court ought to command respect everywhere, has reconsidered the doctrines of that case, and expressly reaffirmed them in

Union Pacific R. Co. v. McDonald, 152 U. S. 262, 272, 273, 274–279, 14 Sup. Ct. 619, 38 L. Ed. 434, at which page, after citing and commenting on the various cases, the court says:

"We adhere to the principles announced in Railroad Co. v. Stout, supra."

This case was recently cited and followed by the Circuit Court of Appeals in the Second Circuit, opinion by Ward, C. J., in Peirce v. Lyden (decided November 7, 1907) 157 Fed. 552.

I can conceive of no more vicious doctrine than to hold that owners of mills in which are machinery and belts such as these were, dangerous to those who should intermeddle with them unless skilled in the business, may employ inexperienced boys and put them to work in the rooms with this machinery and leave them there alone at noon with parts of it in motion and the rest unguarded and easily accessible, without warning or instruction as to the danger of intermeddling with it, or without positive instructions to keep away from it and not intermeddle, without being liable to the imputation of negligence in so doing. A boy left and allowed to be in such a place under such circumstances is not a trespasser. He is rightfully there. He is there by invitation and permission. By reason of his youth and inexperience and want of instruction and knowledge he may reasonably be expected to follow childish curiosity and childish proclivities and impulses and so intermeddle with or experiment with such machinery and belting. It was for the jury to say whether or not, in view of the youth and inexperience and want of knowledge of this plaintiff, he had such impulses and followed them in intermeddling with this machinery.

In Powers v. Harlow, 53 Mich. 507, 515, 19 N. W. 257, 51 Am. Rep. 154, Cooley, C. J., said:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly."

This language was quoted and approved by the Supreme Court of the United States in Union Pac. R. Co. v. McDonald, 152 U. S., at page 277, 14 Sup. Ct. 619, 38 L. Ed. 434, and has always been approved. It was again quoted and approved by the Supreme Court of the United States in McDermott v. Severe, 202 U. S. 600, 609, 26 Sup. Ct. 709, 712, 50 L. Ed. 1162, where the court, on dissent, said:

"This court in Union Pacific Railroad Co. v. McDonald, 152 U. S. 262, 277, 14 Sup. Ct. 619, 38 L. Ed. 434, quoted approvingly from Judge Cooley in a Michigan case: 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precautions accordingly.' This view is supported by other well-considered cases. Powers v. Harlow, 53 Mich. 507, 514, 19 N. W. 257, 51 Am. Rep. 154; Camden Interstate Railway Co. v. Broom, 139 Fed. 595, 71 C. C. A. 641; Forrestal v. Milwaukee Electric Railway Co., 119 Wis. 495, 97 N. W. 182; Strutzel v. St. Paul City Railway Co., 47 Minn. 543, 50 N. W. 690; Gray v. St. Paul City Railway Co., 87 Minn. 280, 91 N. W. 1106."

So the charge was correct wherein the jury was told that:

"In determining this question of contributory negligence you are not controlled by the same rules you would be in the case of an adult who under-

stands and appreciates the dangers of the situation, or the dangers of doing what he does do. * * * An infant, in order to avoid the implication of negligence, is bound to exercise only that degree of care which can reasonably be expected from one of his years; one of his years in the first instance, and then comes in experience and knowledge gained in the work. Hence you, gentlemen of the jury, must consider his age, his capacity, his intelligence, his experience, if any, in the business in which he was engaged; also what information he had received and gained, and what instructions he had received on the subject, if any. * * * Of course, if he had been previously instructed as to such dangers before he went there, or he knew them from experience, then no instructions there were necessary. If he had not, and there were such dangers, it was the duty of the defendant, as I have said before, to fully instruct him, and it was negligence not so to do. If he knew the dangers from experience, then instructions would not be necessary, and a finding of negligence cannot be predicated or based on a failure to give them."

The court was referring to latent dangers, those not patent to a youth of his apparent age and capacity.

The doctrine laid down by the court as to the rules for determining the negligence of a boy was expressly held and stated by the Supreme Court of the United States in Railroad Company v. Stout, supra, in the following language:

"While it is the general rule in regard to an adult that to entitle him to recover damages for an injury resulting from the fault or negligence of another he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case."

And, again, in Union Pac. R. Co. v. McDonald, 152 U. S. 262, 281, at page 281, 14 Sup. Ct. 619, 626, 38 L. Ed. 434, the court said:

"The question of negligence upon the part of an infant must be determined with reference to his age and to the situation in which, at the time of the injury, the circumstances placed him. The authorities cited—indeed, all the adjudged cases—agree, as declared by the Court of Appeals of New York, that in applying the rule that a person who seeks to recover for a personal injury sustained by another's negligence must not himself be guilty of negligence that substantially contributed to the result, the law discriminates between children and adults, the feeble and the strong, and only requires of each the exercise of that degree of care to be reasonably expected in view of his age and condition. Reynolds v. N. Y. Central, etc., Railroad, 58 N. Y. 248, 252."

And in Serano v. N. Y. C. & H. R. R. Co., 188 N. Y. 156, 165, 80 N. E. 1025, 1027, 117 Am. St. Rep. 833, the Court of Appeals held:

"A child of tender years is not required to exercise the same degree of care and prudence in the presence of danger which is expected and required of an adult under like circumstances, but she is required to exercise such care and prudence as is commensurate with one of her age and intelligence."

The court cites:

"Wendell v. N. Y. C. & H. R. R. Co., 91 N. Y. 420; Zwack v. N. Y., L. E. & W. R. R. Co., 160 N. Y. 362, 54 N. E. 785; Costello v. Third Ave. R. R. Co., 161 N. Y. 317, 55 N. E. 897; Byrne v. N. Y. C. & H. R. R. R. Co., 83 N. Y. 620; McGovern v. N. Y. C. & H. R. R. R. Co., 67 N. Y. 421; Thurber v. Harlem B., M. & F. R. R. Co., 60 N. Y. 326; Barry v. N. Y. C. & H. R. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377."

The jury was carefully and repeatedly instructed on this point.

In Peirce v. Lyden, supra, recently decided by the Circuit Court of Appeals, Second Circuit, the defendant stored barrels of oil in a shed,

unlocked during the daytime, on his own lands, but near a school-house. These barrels had their heads knocked in so the oil could be dipped out. The school boys entered the sheds, dipped out the oil, and lighted a fire and threw the oil on it, and in so doing a boy was severely burned either by the bursting of a can of oil which they had obtained at the sheds or by running and jumping through the fire on which oil was thrown. There was no evidence that the defendant or his agents knew of this propensity of the school boys to meddle with the oil. His night watchman, however, did know of it, but his knowledge was not communicated to the defendant or his agents. Held, the injured boy could recover on the authority of Railroad v. Stout, supra.

In the case now before this court the evidence already quoted shows that defendant's superintendent knew that one of the boys employed in the factory had intermeddled with the machinery, and that he ordered him not to do it. Two boys had intermeddled with this machinery in this room at the noon hour on three occasions at least. These facts, with the attractiveness of such machinery and belts and the well-known propensities of such boys, were all sufficient to justify the jury in finding that defendant knew, or had reasonable cause to know, that such boys were liable to intermeddle with them. It was left to the jury to say whether the defendant and its managers knew this fact, if it was a fact, or had reasonable cause to know it, and were negligent in not giving instruction or warning, etc. Proof of positive knowledge on the part of defendant that boys had actually intermeddled was not necessary.

In Railroad Co. v. Stout, supra, the court said:

"So in looking at the remoteness of the machine from inhabited dwellings, when it was proved to the jury that several boys from the hamlet were at play there on this occasion, and that they had been at play upon the turntable on other occasions, and within the observation and to the knowledge of the employés of the defendant, the jury were justified in believing that children would probably resort to it, and that defendant should have anticipated that such would be the case."

So here, when the attractive nature and character of this machinery and of these belts were shown, and when it was shown that plaintiff and Johnson had intermeddled with them on at least three occasions, and that Johnson, when 14 years of age, had so intermeddled with the machinery in the room above to the knowledge of Keeley, defendant's superintendent, who had directed him not to do so, the jury was justified in finding that defendant should have anticipated that plaintiff would or might intermeddle with the machinery and belts in the reeling room.

In Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154, cited and approved by the Supreme Court of the United States in Union P. R. Co. v. McDonald, supra, the following from the syllabus sufficiently states the case:

"(7) Children must be expected to act upon childish instincts; and those who are answerable for their safety must take precautions accordingly, and must expect them to meddle with anything that is likely to tempt them if left exposed to their view and within their reach.

"(8) A small boy, finding a dynamite cartridge in a common packing box among the sawdust, proceeded to crack it on a stone, and maimed himself for life. The boy was rightfully on the premises, and his father was at work hard by. The packing box was on the ground under a rude shed, and was marked 'Powder,' but neither the boy nor his father could read. It had been left exposed by the agent of the landlord. Held, that an action would lie against the landlord for the injury, and that neither the child nor his father could be said to be guilty of contributory negligence."

In that case there was no evidence that boys or children had ever resorted to the shed where the dynamite cartridges were kept. The boy's father was not employed by defendant in or about the shed, and had no duties there, and the boy had no business there, or on the defendant's premises in the neighborhood, except as he accompanied his father, who was at work at agricultural pursuits on some of the adjaent land 10 rods distant from the shed, which he leased. The place where the father and son had the right to be was perfectly safe. The danger lay in the dynamite cartridges in the shed on other land, but in the immediate neighborhood. The boy in wandering about, impelled by curiosity and childish impulses, went into the shed and found and took one of the cartridges which were left exposed and used it as a plaything. While so doing it exploded and injured him. Judge Cooley, in giving the opinion of the court, said:

"We cannot under these circumstances say that the plaintiff's father was chargeable with fault in not suspecting danger and warning his children away from it [he did not know of the dynamite], or that the child himself was blameworthy in acting upon the childish instincts and propensities which combined with the negligence of defendant's servant to bring the danger upon him."

This is quoted and approved in Union Pac. R. Co. v. McDonald, supra, at page 277 of 152 U. S., at page 625 of 14 Sup. Ct. (38 L. Ed. 434). In that case Judge Cooley also said:

"The moving about of the children upon the lands where they were at liberty to go while they were not actually employed was as much an incident to their being there as is the loitering or playing by children outside the traveled part of the highway as they go upon it to school or upon errands."

So here the intermeddling of this boy with this machinery and these belts was, under the circumstances, as much an incident of his being there as was his eating his dinner or moving about for exercise.

In Iamurri v. Saginaw City Gas Co., 148 Mich. 27, 111 N. W. 884, decided April 30, 1907, the defendant left a tank wagon containing "drips," explosives, to which was attached a horse, unattended in the public street. Children climbed on the wagon and were driven away, but not by defendant or any of its employés. Very soon thereafter other boys, the plaintiff being one, climbed on the wagon and one of them dropped a lighted match into the tank and it exploded. The court said:

"The children had a right to play on the highway, and this wagon was easily accessible and attractive to them as they were lawfully playing upon the highway. * * * It was negligence on the part of the defendant to leave this wagon in this manner in the public highway."

So in the case at bar this machinery and these belts whether loose, wound up and flapping, or otherwise, with the shafts in motion, were

attractive things as the jury found; and it was negligence to leave them and this boy in the same room alone, the boy, uninstructed and uninformed, if the dangers were not obvious or known to him, and defendant knew, or in the exercise of due care towards him ought to have known, such facts.

Again, it was the duty of the defendant to warn and instruct the plaintiff as to the dangers, if he needed instructions; and if the defendant's superintendent in charge did not give the necessary instructions and warnings, and he turned plaintiff over to the foreman of the room to be taught and instructed, then it was the foreman's duty to give such instructions, and, if he did not, the defendant cannot escape liability because of the negligence of the superintendent or foreman in failing to give necessary instructions or warnings.

In 4 Thompson's Commentaries on the Law of Negligence, § 4102, it is said:

"A foreman who knows an employé is unskilled in the work which he is directed to perform is bound to instruct him with reference to the danger incident thereto, unless the same is obvious to an unskilled person; and, if the servant is injured in consequence of a failure to give such instructions, the master must indemnify him."

In Wood on Master and Servant (2d Ed.) §§ 349-350, pp. 717-719, it is said among other things:

"Where there are latent defects or hazards incident to an occupation of which the master knows, or ought to know, it is his duty to warn the servant of them fully, and, failing to do so, he is liable to him for any injury that he may sustain in consequence of such neglect. * * * And this rule applies even when the danger or hazard is patent, if through youth, inexperience, or other cause the servant is incompetent to fully understand and appreciate the nature and extent of the hazard."

Where a duty to the servant rests upon the master, and he employs a superintendent or foreman to run and manage the business and hire the servants, and they do so, and put them to work without instructions or warnings when instructions or warnings are necessary, the master cannot escape liability even if that foreman and the servant were coemployés. "The mere fact of minority does not operate to abrogate the rule which puts upon the servant the assumption of the ordinary risks of the employment, unless the minor be of tender years and unable to judge intelligently for himself concerning the nature and extent of the risks." Fisk v. Central, etc., R. Co., 72 Cal. 38, 13 Pac. 144, 1 Am. St. Rep. 22; Curran v. Merchants' Mfg. Co., 130 Mass. 374, 39 Am. Rep. 457; 4 Thompson, Com. on L. of Neg., §§ 4866, 4867; Hinckley v. Horazdowsky, 133 Ill. 359, 24 N. E. 421, 8 L. R. A. 492, 23 Am. St. Rep. 618.

The principle is well illustrated in Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, where plaintiff, a young man 24 years of age, was employed in and about defendant's mines chiefly in loading tram cars. He knew little about mining or the explosives used in the mine. Page 392 of 156 U. S., page 467 of 15 Sup. Ct. (39 L. Ed. 464). Powder and caps were stored in a house into which the plaintiff's duties occasionally called him, and he was not informed or instructed as to the perils and dangers of the place. Plaintiff had nothing what-

160 F.—64

ever to do with using and handling the powder and caps. By the negligence of defendant's employés this powder was so heated and jarred that it exploded and the plaintiff was injured. Said Mr. Justice Field, in giving the opinion of the court:

"So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations, and by the laborers themselves, as reminders of the duty owing to them. These two conditions of liability of parties employing laborers in hazardous occupations are of the highest importance, and should be in all cases strictly enforced."

The duties of the master to children and minors in his employ as to instructions, etc., are well stated in 4 Thompson's Commentaries on the Law of Negligence, §§ 4091 to 4108, inclusive. But in this case the duty to give information or instructions or warnings rested on the defendant, and the negligence of the superintendent and foreman intrusted with the hiring and direction of the plaintiff in and about his work to give such warnings, etc., was its negligence. They were vice principals. 4 Thompson's Com. on Law of Negligence, §§ 4861, 4862, 4878.

The jury was plainly told they must find that the defendant was negligent, that this negligence was the proximate cause of plaintiff's injury, and that the plaintiff must have been free from contributory negligence. The charge is to be taken as a whole, and altogether I find no error. It is, of course, true that under the decisions of the Court of Appeals of the state of New York this plaintiff could not recover, as he was not put to work on or about the belts or machinery. McAlpin v. Powell, 70 N. Y. 126, 26 Am. Rep. 555; Walsh v. Fitchburg R. Co., 145 N. Y. 301, 307, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615. However, those cases have no weight in this court where Railroad Co. v. Stout, supra, and the other cases cited, control. When a case involving negligence, or what constitutes a contract of carriage, etc., is removed from the state court to the Circuit Court of the United States, unless the action is founded on a statute of the state, it involves a matter of general law upon which the courts of the United States exercise their own judgment. Railroad Co. v. Gladmon, 15 Wall. (U. S.) 401, 21 L. Ed. 114; I. & St. L. R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898; N. Pac. R. Co. v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296; Myrick v. Michigan Central R. R. Co., 107 U. S. 109, 1 Sup. Ct. 425, 27 L. Ed. 325; Railroad Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61; Hough v. Railroad Co., 100 U. S. 213, 25 L. Ed. 612.

In Myrick v. Central R. Co., 107 U. S., at page 109, 1 Sup. Ct., at page 431 (27 L. Ed. 325), the court said, referring to the decisions of the Supreme Court of the state of Illinois:

"Assuming that such is the purport of the decisions, they are not binding upon us. What constitutes a contract of carriage is not a question of local law upon which the decision of the state court must control. It is a matter of general law, upon which this court will exercise its own judgment."

See, also, Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359; 2 Foster's Fed. Practice (3d Ed.) pp. 876, 877. See, also, Venner v. Great Northern R. R. Co. (C. C.) 153 Fed. 416, 417, 418, where cases are collected and commented on. This case was dismissed by the Circuit Court, and the dismissal was recently affirmed by the Supreme Court of the United States.

The defendant says:

"The plaintiff in this action was 14 years of age, and the question as to whether or not he was sui juris was one of law, to be passed upon by the court, and it was error to submit the same to the jury."

The jury was expressly told that as this boy was over 12 years of age he was "assumed to be sui juris in the first instance, so there must be evidence tending to show that he was not qualified to understand the danger and appreciate the necessity of observing the same caution required of an adult." The court then stated that some evidence on that subject had been given, and called attention to it in a general way, and said:

"But when such evidence is given, then, in getting at the responsibility of an infant, of a boy of this age, or of any age, and determining whether or not he was guilty of contributory negligence, his age, his capacity, his intelligence, his experience, and the information he had, general information, on the subject, are all to be considered by the jury."

When there is evidence tending to show that a boy of 14 years did not know or understand the latent or patent (patent to all of mature years) dangers incident to an employment in which he was engaged, it becomes a question of fact for the jury, and is not a question of law for the court, how far he understood and appreciated such dangers, whether or not his employer knew his youth and incapacity, etc., and whether or not instructions were necessary.

In McGovern v. N. Y. C. & H. R. R. Co., 67 N. Y. 421, Andrews, C. J., said:

"The law is not so unreasonable as to expect or require the same degree of care or circumspection in a child of tender years as in an adult."

In Costello v. Third Ave. R. Co., 161 N. Y. 317, at page 323, 55 N. E. 897, at page 899, the court, after quoting the above, said:

"The child in the case cited was a lad 8 years old. The rule as above stated has been repeatedly applied by this court to infants varying in age from 6 to 15 years"—citing many cases.

In Tucker v. N. Y. C. & H. R. R. R. Co., 124 N. Y. 308, 318, 26 N. E. 916, 21 Am. St. Rep. 670, the Court of Appeals held that at 14 years of age an infant should be presumed in the first instance to be sui juris, and that:

"This presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of 14 years of age. * * * This presumption may, in a proper case, be so far overborne by evidence as to present a question for the jury, and then the age of the injured party may doubtless be considered by the jury in connection with the facts indicating a lack of comprehension of a dangerous situation."

In a later case, Simkoff v. Lehigh Valley R. Co., 190 N. Y. 256, 83 N. E. 15, the same court held that after a child reaches the age of 7

years the burden of proof rests upon him to establish that he was non sui juris; but it was also held that a refusal so to charge was harmless, as the court did charge that whether sui juris or not he could not recover if he failed to exercise the care commensurate with his years and intelligence.

In the case now under consideration the court told the jury that the plaintiff was presumed to be sui juris; that there must be evidence to satisfy them that he did not know or appreciate the dangers of intermeddling with the machinery; that this fact must have been known to the defendant; that it, with such knowledge, must have failed to give proper warnings and instructions; that the belts and machinery must have been of a nature and character to attract boys of his age to intermeddle therewith, and defendant must have known this, or must have had reasonable cause to know it, and that such belts and machinery must have attracted the plaintiff to intermeddle, and that he must have been injured in so doing, and must have been free from contributory negligence; and also that defendant's negligence must have been the proximate cause of the injury. The court charged the jury:

"Now, also, it is the duty of the master employing such a boy as this not only to inform him that the service, that is, the work and immediate surroundings, is dangerous, that is, of the dangers surrounding him and of the perils of the particular place, but the perils of all the places where extraordinary risks are to be, or may be encountered in such service. That means, of course, encountered by him in connection with the ordinary discharge of his duty, if known to the master, or if he ought to have known them. In such case the servant, in this case the boy, should be warned of their character and extent so far as possible."

The defendant excepted to the first part of this part of this charge, but took no exception to it as qualified by the words:

"That means, of course, encountered by him in connection with the ordinary discharge of his duty, if known to the master, or if he ought to have known them. In such case the servant, in this case the boy, should be warned of their character and extent."

The court was referring to hidden latent dangers, extraordinary perils. And the court subsequently charged when attention was called to the subject:

"I have charged, and I charge again: That the jury must find these other facts which I have recited. That it was a dangerous place. That here were hidden dangers that he didn't understand. It was something calculated to attract the boy, or boys of his age. That it did attract him. That the defendant either knew or in the exercise of reasonable care ought to have known it, and plaintiff was not properly instructed, and that therefore it was negligence to leave him there in that way, and if they so find all these things that I have recited and which I have not now undertaken to go over again, if they find the facts which I have stated, why, then, they can find negligence."

The jury had been told that in speaking of "place" the court was referring to the surroundings in the room, these belts, etc., not to that space in the room in which the plaintiff was to clean the bobbins.

I think that the case was, under the amended complaint, one for the jury, and that it was properly submitted. The evidence was ample

to sustain the finding of negligence and absence of contributory negligence, and the damages were moderate.    I find no material or harmful error.

The motion to set aside the verdict and for a new trial is denied.